FRANK COLE, ALIAS FRANK SHAPIRO, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 43248. Filed June 23, 1958.

*Allen M. Mesirow, Esq.*, for the petitioner.

*John James O'Toole, Esq.*, and *Norman L. Rapkin, Esq.*, for the respondent.

The respondent determined deficiencies in income tax and additions to tax for fraud as follows:

| Year | Deficiency | Additions to tax, sec. 293 (b) |
|---|---|---|
| 1946 | $173,286.58 | $86,643.29 |
| 1947 | 173,872.46 | 86,936.23 |
| 1948 | 164,371.03 | 82,185.52 |
| 1949 | 164,007.81 | 82,003.91 |
| 1950 | 168,268.61 | 84,134.31 |

The amounts of the deficiencies and additions to tax were scaled down by respondent's answer to the amended petition, where he affirmatively alleged that for the years 1946 through 1950 petitioner, with the intent to evade payment of his income tax, willfully and fraudulently understated his taxable income as follows:

| Year | Understatement |
|---|---|
| 1946 | $26,962.44 |
| 1947 | 65,388.20 |
| 1948 | 20,692.59 |
| 1949 | 63,365.55 |
| 1950 | 83,952.25 |

The issues are:

1. Whether the petition was filed within 90 days after the notices of deficiencies were mailed so as to give this Court jurisdiction.

2. Whether this Court should order the entry of deficiencies in accordance with the contents of copies of stipulations between the parties, which respondent contends were never executed on his behalf and which were not filed as stipulations in this Court.

3. Whether respondent's determination of income of petitioner for the taxable years by the use of the increase in net worth plus expenditures method correctly reflects the true taxable income of the petitioner for those years.

4. Whether a part of the deficiency for each of the taxable years is due to fraud with intent to evade and defeat payment of tax within the meaning of section 293 (b), I. R. C. 1939.

### FINDINGS OF FACT.

Certain facts were stipulated orally at the hearing and are incorporated herein by reference.

Petitioner is a resident of Mount Pocono, Pennsylvania. During the years 1946 through 1950 he was married to Helen Cole. They lived at 311 Bradford Parkway, Syracuse, New York. They had one child, Barbara Joyce Cole, who was 5 or 6 years old in 1950. In 1948 petitioner and Helen Cole were separated, but resumed living together in 1949. In 1953, they were divorced.

Petitioner had a son, Herbert M. Cole, and a daughter, Beverly Cole, by a prior marriage.

During the years 1946 to 1950, inclusive, petitioner was engaged in the operation of an illegal lottery in the northern part of the State of New York. Under his method of operation the only records maintained consisted of weekly memorandum sheets identified by a code number. The code numbers were assigned to distributors at various locations. The sheets purported to show the number of tickets given to each distributor and the number of tickets returned by the distributor to petitioner. Total receipts were determined thereon by multiplying the number of tickets sold by the unit price. From the amount thus determined certain deductions were taken by the distributor, and the remainder was paid to petitioner. Small "hits" were paid by each distributor from his share of the profits, but petitioner was responsible for the payment of "prime hits" amounting to $1,100 or more. Hits were paid in cash. If any hit amounted to $1,100 or more, and the distributor did not have enough cash from the week's collections belonging to petitioner from which payment could be made, petitioner would send a postal money order to the distributor. Petitioner never dealt directly with any winner.

He operated through the use of aliases. Names other than Frank Cole used by him were Joseph Fritt, Manny Weisbond, Ralph Hodgen, Herbert M. Cole, Frank Flanagan, James Ryan, Frank Shapiro, John Murphy, and Frank Clark. His expenditures were usually in the form of cash, bank drafts, or cashier's checks. The income realized by him from his business could not be ascertained or verified from books or records maintained by him.

Petitioner filed timely income tax returns for the taxable years 1946 through 1950 disclosing the following amounts of net taxable income:

| Year | Amount |
| --- | --- |
| 1946 | $38,255.80 |
| 1947 | 29,521.76 |
| 1948 | 31,294.87 |
| 1949 | 26,462.89 |
| 1950 | 24,232.94 |

In the returns filed for the years 1946, 1947, and 1949, petitioner stated that his home address was 311 Bradford Parkway, Syracuse, New York. In the returns filed for the years 1948 and 1950, he stated

that his home address was 2515 E. Fayette Street, Syracuse, New York. In August of 1951 he left Syracuse permanently and became a resident of Pennsylvania.

All of the returns filed for the years 1946 to 1950, inclusive, were signed only by Frank Cole. All of the income reported in these returns was his income. The returns filed for the years 1946 and 1947 were individual returns of Frank Cole. The returns filed for the years 1948, 1949, and 1950 purported to be joint returns of Frank Cole and his wife, Helen Cole.

In 1955 petitioner was indicted for willfully and knowingly attempting to evade and defeat a large part of the income tax due and owing by him for the year 1949 and for the year 1950, by filing false and fraudulent income tax returns. On March 6, 1957, he entered a plea of guilty to both counts and was convicted.

On April 7, 1952, the respondent issued a jeopardy assessment against the petitioner under the name of Frank Cole, alias Frank Shapiro. The name Frank Shapiro was used because the special agent who recommended the issuance of the jeopardy assessment knew that this was the alias petitioner was using. The jeopardy assessment was in the following amounts:

| Year | Tax | Addition to tax, sec. 293 (b) | Interest |
|---|---|---|---|
| 1946 | $173,286.58 | $86,643.29 | $52,641.14 |
| 1947 | 173,872.46 | 86,936.23 | 42,387.01 |
| 1948 | 164,371.03 | 82,185.52 | 30,208.24 |
| 1949 | 164,007.81 | 82,003.91 | 20,301.02 |
| 1950 | 168,268.61 | 84,134.31 | 10,732.31 |

On April 28, 1952, statutory notices of deficiencies for the years 1946 to 1950, inclusive, to "Frank Cole, alias Frank Shapiro, Albany, New York," were mailed by respondent by registered mail addressed to "Frank Shapiro, DeWitt-Clinton Hotel, Albany, New York." The notices mailed on that date were not received by petitioner and were returned to the respondent by the postal authorities.

On June 3, 1952, these same notices, bearing date of April 28, 1952, were remailed by registered mail addressed to Frank Cole, Jefferson-Clinton Hotel, Syracuse, New York, and duplicates of these notices were also mailed by registered mail on June 3, 1952, addressed to Frank Cole, Mount Pocono, Pennsylvania. The second group of notices was received by petitioner on June 6, 1952.

With respect to the taxable years 1946, 1947, and 1948, petitioner and the Commissioner of Internal Revenue consented in writing to the assessment of the amount of any income taxes due for those years at any time on or before June 30, 1953. The statutory notices of deficiency for the years 1946 to 1950, inclusive, were issued prior to the expiration of the applicable statute of limitation.

On July 2, 1952, the Commissioner made the following partial abatement of the jeopardy assessments:

| Year | Tax | Addition to tax, sec. 293 (b) | Interest |
|------|-----|------------------------------|----------|
| 1946 | $172,020.20 | $86,643.29 | $52,256.44 |
| 1947 | 173,872.46 | 86,936.23 | 42,387.01 |
| 1948 | 156,538.40 | 82,185.52 | 28,768.76 |
| 1949 | 163,706.65 | 82,003.91 | 20,263.74 |
| 1950 | 167,792.15 | 84,134.31 | 10,701.92 |

Petitioner filed a petition with this Court on August 8, 1952. On October 28, 1952, he filed an amended petition.

On January 5, 1953, a letter was sent to petitioner's counsel by the Assistant District Commissioner, Appellate Division, Internal Revenue Service, Buffalo, New York, informing him that that petitioner's case had been referred to the Buffalo district of the appellate division for the purpose of considering the possibilities of effecting a settlement without litigation. The letter stated that if petitioner's counsel desired a conference to discuss the issues for the purpose of considering such possibilities, one would be arranged for a date mutually convenient. Conferences were held in January and February 1953 at the office of the district commissioner in Buffalo. As a result of these conferences the following stipulation was prepared by the Government's representative:

It is hereby stipulated and agreed that there are deficiencies in Federal income taxes and penalties due from this petitioner without regard to jeopardy assessments made on April 7, 1952 and June 17, 1952, as follows:

| Year | Deficiencies in Income Tax | Deficiencies in Penalty |
|------|---------------------------|-------------------------|
| 1946 | $1,266.38 | None |
| 1947 | None | None |
| 1948 | 7,832.63 | None |
| 1949 | 301.16 | $657.98 |
| 1950 | | 430.63 |
| | 476.46 | None |

The Court may enter its decision accordingly.

It is further stipulated and agreed that effective upon entry of the Court's decision, petitioner waives the restrictions, if any, contained in the applicable internal revenue act or acts, on the assessment and collection of said deficiencies, plus interest, as provided by law.

This stipulation was signed by the petitioner and, on or about March 5, 1953, was forwarded to the district counsel of the Internal Revenue Service at New York City.

On May 12, 1953, the district counsel advised petitioner's counsel by letter that "we have found it necessary to rewrite" the proposed stipulation signed by petitioner "in order that portions of the jeopardy assessments heretofore levied against Mr. Cole may be abated," and enclosed an original and four copies of "a proposed new stipulation." The letter also stated that if petitioner's counsel would have peti-

tioner sign the original and three copies of the new stipulation and return them, "they will be submitted for approval by the Chief Counsel in the usual course." The amounts of the deficiencies in the original and revised stipulations were the same. The difference between them was that the revised stipulation contained a detailed computation of the deficiencies including therein the amounts of the unpaid jeopardy assessments abated on July 2, 1952.

On May 13, 1953, petitioner's counsel sent a copy of the letter of May 12, 1953, to petitioner with the original and four copies of the revised stipulation. They were signed by petitioner and mailed to the district counsel.

The proposed initial stipulation of March 5, 1953, and the proposed revised stipulation were not signed by any representative of the respondent, and neither of them was submitted to this Court as a settlement of the issues in this proceeding.

On or about May 19, 1953, petitioner received a letter from Edward A. Munley, Internal Revenue Agent, Scranton, Pennsylvania, requesting a conference relative to his income tax liabilities for the years 1946, 1948, 1949, and 1950.

On May 27, 1953, a conference was had between Munley and the petitioner, at which time Munley showed petitioner a warrant of distraint which indicated that the original jeopardy assessments had been abated in part. On the same date, petitioner paid the unabated portion of the assessment for 1946, 1949, and 1950. On June 1, 1953, he paid the portion of the unabated assessment for 1948.

On November 18, 1952, and February 20, 1953, notices of tax liens were filed in the United States District Court, Scranton, Pennsylvania. On July 10, 1953, August 3, 1953, and August 9, 1954, the liens theretofore filed were released of record.

The Intelligence Division of the Internal Revenue Service conducted an investigation of petitioner's business and income. During the course of this investigation respondent's agents discovered that in addition to using various aliases to conceal his identity and code numbers to conceal the identity of his distributors, petitioner placed many of his assets in names other than his own, used safe-deposit boxes registered in the names of other individuals, and used cash or other forms of exchange which made it difficult to trace expenditures made by him. A determination of petitioner's net income for the taxable years 1946 through 1950 was made under the net worth plus expenditures method. In preparing the net worth schedule an attempt was made to ascertain all possible sources of nontaxable income. No gifts or legacies were found. Any loans were credited upon the schedule.

On the basis of the net worth schedule, the respondent determined that the petitioner's net income for each of the taxable years and that

the understatements of net income in his returns for those years were as follows:

| Year | Net income | Understatement |
|------|-----------|----------------|
| 1946 | $66,218.24 | $26,962.44 |
| 1947 | 95,909.96 | 65,388.20 |
| 1948 | 53,787.46 | 20,692.59 |
| 1949 | 91,628.44 | 63,365.55 |
| 1950 | 109,985.19 | 83,952.25 |

In the returns filed by petitioner for each of the years 1946 to 1950, inclusive, he omitted and failed to report a substantial amount of the net income realized by him. The foregoing figures correctly reflect petitioner's actual net income and the understatements on his returns for the years 1946–1950, inclusive.

The returns filed by petitioner for each of the years 1946 through 1950 were false and fraudulent with intent to evade tax, and at least part of the deficiencies for each of these years was due to fraud with intent to evade tax.

### OPINION.

RAUM, *Judge*: 1. At the hearing petitioner's counsel took the position, for the first time, that the petition should be dismissed because it was not timely filed. The contention was not made in the form of a motion, although it was treated as such by respondent's counsel, who indicated that he would have no objection to a motion to dismiss. The matter, however, was left for further consideration on briefs.

Petitioner's brief renews the contention, arguing that the timely filing of a petition is jurisdictional, and that the petition herein was not filed within the 90-day period allowed by section 272 of the Internal Revenue Code of 1939. Respondent's position on brief is not clear. Still treating petitioner's contention as a motion, he states:

With respect to this motion respondent has no objection, for should the Court so dismiss the petition, respondent will then take the administrative action necessary to assess the liabilities. However, in consideration of the law and facts relating to this motion, the respondent discusses the possibility that the Court does have the necessary jurisdiction to hear the case on its merits, and since the parties cannot oust the Court of jurisdiction once it is obtained, then the motion should not properly be granted.

If we were to look solely at the first sentence quoted above, it would appear that there is no controversy between the parties; that petitioner seeks to have his petition dismissed and respondent does not object. Accordingly, as things appear on the surface, the simple thing to do would be to dismiss the petition. However, the matter is more complicated than that. Whatever may be his strategy, petitioner seeks dismissal on the ground that the Court lacks jurisdiction. Were he willing to accept dismissal without any such adjudication, we would

unhesitatingly enter an order of dismissal. But the Commissioner refuses to concede that the Court is without jurisdiction, and our own study of the case convinces us that we have jurisdiction.

The Commissioner on April 28, 1952, mailed notices of deficiency by registered mail to "Frank Shapiro, DeWitt-Clinton Hotel, Albany, New York." The notices mailed on that date were not delivered to petitioner by the postal authorities and were returned to the director at Albany. On June 3, 1952, the same notices were remailed by registered mail to "Frank Cole, Jefferson-Clinton Hotel, Syracuse, New York," and duplicates of these notices were sent by registered mail to "Frank Cole, Mount Pocono, Pennsylvania." The duplicate set of notices was received by petitioner on June 6, 1952. The original petition herein was filed on August 8, 1952, which was untimely if the statutory 90-day period began to run from the date of the first mailing, but was timely if the second mailing is to be taken as the starting point.

Petitioner relies upon *Dolezilek* v. *Commissioner*, 212 F. 2d 458 (C. A. D. C.), in support of his position that the 90-day period is measured from the earlier date. But in that case the registered deficiency notice was properly addressed to the taxpayer, who appears to have ignored two post office notices that the letter was there for her and never claimed it. Accordingly, it was held that the 90-day period began to run from the mailing of that deficiency letter and not from a later time when the returned deficiency letter was manually given to her by a deputy collector, particularly since there still remained ample time within which to file a petition after such manual delivery.

In the instant case the envelope of the April 28 letter identified the addressee simply as "Frank Shapiro," notwithstanding that his name was "Frank Cole," and known as such to the Commissioner through his income tax returns and other documents. Moreover, the record strongly suggests that "DeWitt-Clinton Hotel, Albany, New York" was not petitioner's last-known address. He had in fact moved from New York to Pennsylvania, where he actually received the notices sent to him by the second mailings. And even his prior New York address, as shown on his returns and other documents in the possession of the Commissioner (such as consents fixing period of limitations for assessment of tax), was different from the one to which the notices were first mailed. This case is thus sharply to be distinguished from *Theron C. Teel*, 27 T. C. 375, affirmed 248 F. 2d 749 (C. A. 10), where the registered notice was sent to the taxpayers at their correct and last-known address.

Petitioner in fact received the deficiency notices as the result of the second mailings, in which he was properly identified. We hold that the petition, which was filed within 90 days of the second mailings, was timely.

2. Petitioner contends further that a proposed stipulation of deficiencies for the years in controversy (quoted in our findings and sometimes referred to as Exhibit 8–H) which he had signed and forwarded on March 5, 1953, to respondent's New York office "had been accepted and signed by Charles W. Davis, the then Chief Counsel of the Bureau of Internal Revenue, or his designated representative, and the resulting tax liability communicated to the Scranton Office, Collector of Internal Revenue, for collection." He argues that the Court should direct that this stipulation "be entered of record and issue an order accordingly." We think there is no merit to the contention.

Petitioner seeks to make much of the fact that the stipulation, which is in evidence as Exhibit 8–H, is merely a copy of the one which Government counsel had agreed to furnish. At the hearing petitioner's counsel stated:

MR. MESIROW: Counsel for the Respondent has indicated that a document which is a stipulation signed by Petitioner Frank Cole and which we have given Exhibit No. 8–H is now in the Buffalo office of the Appellate Division and will be furnished to the Court immediately after this hearing.

However, Exhibit 8–H is marked "OFFICE COPY" and in the blank space for petitioner's signature there is inserted in writing "/s/ Frank Cole." No writing of any kind appears in the space provided for the signature of the Chief Counsel. Petitioner's counsel states in his brief that: "Counsel for the Respondent informs counsel for the petitioner that despite diligent search in the files of both the Buffalo and New York Appellate Offices, the original signed copies of the stipulation cannot be found." Petitioner's counsel expresses incredulity at this, and asks the Court to draw inferences against respondent in this connection. He states that the stipulation was in fact signed by the Chief Counsel, or his authorized representative, and demands that an order be entered determining his liability in accordance with the stipulation.

However, there is more to the picture. Although petitioner had signed the original of Exhibit 8–H about March 5, 1953, the evidence is clear that it had not been formally accepted by an authorized representative of the respondent. On May 12, 1953, a letter on behalf of the district counsel at New York to petitioner's counsel stated that it had been found necessary to rewrite the stipulation, and enclosed an original and four copies of a proposed new stipulation. It added: "If you will have your client sign the original and three copies and return them to us *they will be submitted for approval by the Chief Counsel* in the usual course." (Italics added.) Plainly, the matter of petitioner's tax liability had not yet been settled. Petitioner signed the new stipulation, and returned the required number of copies to

the Government. One of the copies, signed by him, is in evidence as Exhibit 9–I; it is not signed by anyone on behalf of the respondent.

Counsel for respondent testified at the trial. He stated that he had been in the case since approximately June 4, 1953, that he is the only one in the New York office or the Washington office who is familiar with the file, that he is fully conversant with all matters which went on with respect to the case, that the original stipulation of March 5, 1953, prepared in Buffalo, had been forwarded to the New York office and was not approved, that thereafter the proposed new stipulation (Exhibit 9–I) was not approved, and that "the Office of the Chief Counsel never signed a stipulation in this case." We have found his testimony credible and reliable. Although petitioner presented testimony of several of respondent's representatives, none of them stated that either stipulation had been signed or that such had ever been represented to petitioner. Indeed, petitioner's counsel did not even ask the witnesses whether any such representations had been made, notwithstanding an allegation to that effect in his reply to respondent's amended answer, and notwithstanding that the person alleged to have made that representation was called as a witness. Petitioner himself did not appear as a witness. In the circumstances, we are fully satisfied that neither of the proposed stipulations had been accepted by the Chief Counsel or his authorized representative.

Moreover, even if it be assumed that either stipulation had been signed, petitioner would not be entitled to have an order entered disposing of the case upon the basis of such document. This Court will, of course, enter an order adjudicating liability in accordance with an agreement of the parties, for the existence of such agreement shows that there is no longer any controversy between them. And once a stipulation is filed by both sides, it is binding upon them. Cf. *Fred M. Saigh, Jr.,* 26 T. C. 171. But where, for whatever reason, the parties are not in agreement at the time the case is called for trial, it is wholly irrelevant in this connection that they may have been in agreement at some earlier time. The inquiry into whether respondent's Chief Counsel had "signed" the stipulations in this case is therefore beside the point. Furthermore, the mere signing of a paper, while retaining custody of it, does not necessarily render it an operative document. Until it is delivered or until some appropriate action is taken with respect thereto, it is far from clear that the signer may not scratch out his signature.

Nor are we presuaded that there is any sound basis for an estoppel against the respondent. That petitioner paid the relatively small amounts of taxes set forth in the abortive stipulations is hardly such a ground. The fact is that there had been jeopardy assessments outstanding against him, and these assessments had been reduced in

July 1952 to the very amounts subsequently shown in the stipulations. When he paid those amounts he was merely discharging liability under those assessments, which could not preclude the maintenance of these proceedings to determine his correct taxes for the years in question. There was completely absent here the kind of action, in reliance upon a properly executed stipulation, to one's detriment that is required for an estoppel, even assuming that it might otherwise be available to petitioner in a situation of this kind. Cf. *Joseph T. Miller*, 23 T. C. 565, affirmed 231 F. 2d 8 (C. A. 5) ; *George H. Baker*, 24 T. C. 1021, 1024–25.

We hold that petitioner is not entitled to have an order entered adjudicating his liability in accordance with the contents of either Exhibit 8–H or Exhibit 9–I.

3. As to the merits, respondent's determination (as scaled down in his answer to the amended petition) is based upon a net worth statement, which was introduced in evidence. Petitioner's counsel refused to present any evidence as to petitioner's income for the years in controversy. The burden was on him and he did nothing whatever to meet it. Apart from a few comparatively minor items, respondent's counsel presented comprehensive evidence to support the various entries on the net worth statement. Bearing in mind that the burden was on the petitioner, we have found as a fact that there were understatements of net income in the amounts determined by respondent.

In connection with the additions to tax for fraud, the burden was on the Government, and we are satisfied that it has been fully carried. The proof showed large and persistent understatements of income (wholly apart from the few items on which the Government presented no evidence) over a period of years. Petitioner's income was from an illegal lottery; he maintained no books or records from which his income could be determined; he resorted to the use of many aliases; he conducted his transactions primarily in cash; and he pleaded guilty to an indictment for tax evasion for 2 of the taxable years now in issue. We have no doubt on the entire record that the return for each year before us was false and fraudulent, and that at least part of the deficiency for each year was due to fraud with intent to evade tax.

*Decision will be entered under Rule 50.*