HAROLD S. B. AND ANNA E. HAGER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hager v. Commissioner
Docket No. 1831-76.
United States Tax Court
T.C. Memo 1980-84; 1980 Tax Ct. Memo LEXIS 502; 39 T.C.M. (CCH) 1274; T.C.M. (RIA) 80084; March 20, 1980, Filed Robert M. Tyle, for the petitioners. William J. Neild, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial judge: Respondent determined deficiencies of $1,592.70, $1,457.23, and $489.90, respectively, in petitioners' 1969, 1970, and 1972 federal *504 income taxes. Concessions having been made on both sides, the sole issue remaining for decision is whether petitioners are entitled to a net operating loss deduction under section 172 for either 1969 or 1970, and if so, the amount thereof, and whether petitioners are entitled to a casualty loss deduction under section 165(a) for 1972 in excess of the amount allowed by respondent. Resolution of all the issues in contention turns on the amount of the casualty loss petitioners suffered in 1972. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found.
Petitioners filed their joint 1969, 1970, and 1972 federal income tax returns with the Internal Revenue Service Center at Andover, Massachsetts. At the time the petition herein was filed, they resided at Painted Post, New York. Petitioners purchased a house in Painted Post, New York, in May of 1971 for $21,500. They made various capital improvements between the time they purchased it and June of 1972 for which they paid $3,570. On June 23, 1972, hurricane Agnes struck the area and caused severe flooding and damage to petitioners' property. Forty two inches of water covered the first floor of *505 the house. In the basement, two temporary support posts were knocked out, walls were cracked, the furnace was ruined, and a door, windows, sewer lines, and water pipes were broken. On the first floor, the hardwood flooring, walls, insulation, wiring, windows, doors, and lower kitchen cabinets were ruined. The detached garage was displaced six inches on a bias and the ramp and firebrick driveway leading to the garage were destroyed. The grounds were covered with sludge and debris. Petitioners did not move back into the house until after Thanksgiving Day of 1972. In the interim, they lived with friends and relatives. After the flood, petitioner Harold S. B. Hager and his son cleaned the house out and made repairs. Harold worked on the house nearly full time for four months while his employer gave him time off to do so. His son worked on it until he entered college in the fall. Some of the materials they used were not of as good quality as the original, but, of course, they were newer. They installed a new second floor bathroom where previously there had been none. Petitioners spent approximately $13,000 for the repairs to the realty, including $1,000 for the new bathroom. *506 Other the unrepaired damage to one section of the cellar flor and the garage, the house was essentially back to its pre-flood condition at the time of the hearing of this matter. The fair market value of the home was $24,000 immediately before the flood and $8,500 immediately thereafter. The house had an adjusted basis in petitioners' hands of $25,450. Petitioners received disaster home loan assistance from the Small Business Administration (hereinafter referred to as the SBA). Sometime thereafter, the SBA forgave repayment of $5,000 of the loan. They did not recover anything further for their loss by way of insurance or otherwise. On their joint 1972 federal income tax return, petitioners claimed a casualty loss deduction under section 165(a) in the amount of $27,765.76. Petitioners now concede that that amount should be reduced by $5,000, i.e., the amount of the SBA indebtedness which was forgiven. In his notice of deficiency, respondent allowed $6,420.24 of the claimed deduction, but disallowed the remainder for lack of substantiation. Respondent does not contest the amount of $5,115.76 claimed as part of the deduction for damage to personal property. OPINION *507 The issue here is purely factual. Respondent does not contest petitioners' claimed deduction with respect to their personalty lost in the hurricane. Petitioners concede that the amount of the loss should be reduced by the amount ($5,000) of the SBA loan forgiveness. The only dispute is the amount of the loss to the realty, respondent contending that petitioners have failed to show the alleged decrease in fair market value of the house and to establish its basis, while petitioners assert that they have met their burden of proof. Section 165(c)(3) permits individuals to deduct losses suffered on the damage to and destruction of nonbusiness property by reason of fire, storm, or other casualty to the extent that each such loss exceeds $100 and is not compensated for by insurance or otherwise. The measure of the loss is the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, but not exceeding its adjusted basis. Helvering v. Owens, 305 U.S. 468 (1939); Lamphere v. Commissioner, 70 T.C. 391 (1978); sec. 1.165-7(b)(1), Income Tax Regs.
To establish the amount of *508 the loss, the relevant fair market values "shall generally be ascertained by competent appraisal." Sec. 1.165-7(a)(2)(i), Income Tax Regs. Petitioners obtained appraisals of the fair market value of the house before and after the flood from two local real estate agents. The testimony of neither is before the Court and their appraisal reports do not state on what method or methods they were based. The circumstances are such here that we draw no inference from the absence of their testimony that the testimony of these persons would be unfavorable to petitioners, but neither can we give their appraisals any weight. The opinion of a landowner as to the value of his or her property is admissible in evidence without further qualification because of the owner's special relationship to that property. District of Columbia Redevelopment Land Agency v. 13 Parcels of Land, 534 F.2d 337, 339-340 (D.C. Cir. 1976); United States v. Sowards, 370 F.2d 87, 92 (10th Cir. 1966); Kinter v. United States, 156 F.2d 5 (3d Cir. 1946); Harmon v. Commissioner, 13 T.C. 373 (1949); see also Fed. R. Evid. 701 *509 ; 2 Jones, Evidence, sec. 14:6, p. 599 (6th ed. 1972); 3 Wigmore, Evidence, sec. 714, p. 50 (1970 rev.). But, we are not bound to accept that testimony at face value, even though it is uncontradicted, if it appears to be improbable, unreasonable, or offered solely to serve the self-interests of the taxpayer. Fixel v. Commissioner, T.C. Memo. 1974-197, affd. without opinion 511 F.2d 1400 (5th Cir. 1975); see United States v. 3,698.63 Acres of Land, Etc., 416 F.2d 65 (8th Cir. 1969). While the owners of property are competent to testify as to its value, the weight to be given their testimony will depend upon their knowledge, experience, method of valuation, and other relevant considerations. Biddle v. United States, 175 F. Supp. 203, 204 (E.D. Pa. 1959); see Jenny v. Commissioner, T.C. Memo. 1977-142. Petitioner Harold S. B. Hager testified that the house had a fair market value of $24,000 to $25,000 immediately prior to the flood. He also testified that it was worthless, or had a negative value, immediately afterwards. While we are willing to accept the lower amount of his appraisal range for the property's *510 fair market value immediately prior to the flood, we believe on the basis of all the evidence that it had some substantial fair market value immediately after the flood, disregarding as we must the temporary fluctuation in value due to emotions. Cole v. Commissioner, 30 T.C. 665 (1958). The matter is not susceptible of precise determination on this record, but, doing the best we can with the information before us, we have found that the property had a fair market value of $8,500 immediately after the flood. Accordingly, we find that the loss suffered to petitioner's realty was $15,500. The adjusted basis of the property in petitioners' hands clearly exceeded that amount. Sec. 1011(a). Thus, we hold that petitioners are entitled to a casualty loss deduction for 1972 in the amount of $15,515.76. [3]
* * *
In accordance with the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. ↩
Loss to realty
$15,500.00
Loss to personalty
5,115.76
Subtotal
$20,615.76
Less: SBA loan forgiveness
$5,000
Sec. 165(c)(3) limitation
100
Total
5,100.00
Deductible loss
$15,515.76