**ESTATE OF Ralph L. JONES, Deceased, Zepha H. Jones, Executrix, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 84–1468.

United States Court of Appeals, Sixth Circuit.

Argued May 7, 1985.

Decided July 10, 1986.

Alan C. Housholder (argued), Nashville, Tenn., Quentin L. Housholder, for petitioner-appellant.

Fred T. Goldberg, Jr., Chief Counsel, I.R.S., Washington, D.C., Glenn L. Archer, Jr., Michael L. Paup, Tax Div., Dept. of Justice, William S. Estabrook, Patricia A. Willing (argued), for respondent-appellee.

Before ENGEL and JONES, Circuit Judges and EDWARDS, Senior Circuit Judge.

ENGEL, Circuit Judge.

The Estate of Ralph L. Jones, Zepha H. Jones, Executrix (hereinafter "Taxpayer") appeals the decision of the Tax Court denying the enforcement of an alleged agreement entered into between the parties in March, 1983, settling the estate's federal estate tax liability. Taxpayer contends that the Tax Court was in error in holding either that there was not a valid settlement or that the settlement was based on a mutual mistake of fact. We affirm.

The facts surrounding the negotiation of the settlement agreement between Taxpayer's representative and Appeals Officer Harold L. Best of the Internal Revenue's Appeals Division were stipulated and are therefore largely undisputed. Ralph L. Jones died a resident of Gallatin, Sumner County, Tennessee, on August 22, 1978. On May 21, 1979, his widow, as executrix, executed a United States estate tax return, form 706, and the return was received by the I.R.S. on May 24, 1979.

The alternate valuation date of February 22, 1979, was used in valuing the assets of the estate reported on the estate tax return.[1] One of the assets reported on the decedent's return was a sixty-five percent limited partnership interest in Cedarbrook Apartments, Ltd., whose principle asset was an apartment complex. After examining the estate tax return, the District Director proposed a number of increases in the value of decedent's assets.

On December 11, 1981, Taxpayer filed a protest and requested that the case be referred to the Internal Revenue's Appeals Division. On May 13, 1982, Taxpayer was served with a statutory notice of deficiency in the estate tax due in the amount of $285,501.09. One of the adjustments in the notice was an increase in the value of the interest owned by decedent in the partnership which owned the Cedarbrook Apartments. This increase is our only concern in this appeal.

---

**1.** The Internal Revenue Code permits the executrix of the decedent's estate to elect to have certain of the decedent's property valued as of the date of the decedent's death, or at a date six months thereafter. *See* 26 U.S.C. §§ 2032(a)(1)–(2), and related regulations. Commenting upon the predecessors of section 2032, the Supreme Court explained that the purpose of the alternate valuation date is "to mitigate the hardship consequent upon shrinkage in the value of estates during the [period] following death. Congress enacted it in light of the fact that, due to such shrinkages, many estates were almost obliterated by the necessity of paying a tax on the value of the assets at the date of the decedent's death." *Maass v. Higgins*, 312 U.S. 443, 446, 61 S.Ct. 631, 632, 85 L.Ed. 940 (1941).

On August 12, 1982, Taxpayer filed a petition with the Tax Court contesting the deficiency. On October 12, 1982, the Commissioner of the Internal Revenue Service filed his answer. In the latter part of November, 1982, the case was referred to the Appeals Division for consideration. On November 29, 1982, Appeals Officer Harold L. Best wrote a letter to Taxpayer's attorney stating that it would be mutually advantageous if the issues in this case could be settled without a trial. Thereafter, Internal Revenue Service form letter 1220(RO) (Rev. 5–82), dated March 10, 1983, and signed by Appeals Officer Best, was sent to Taxpayer's attorney, advising him that a settlement had been approved. Also attached to this letter was a document entitled "DECISION." This document recited that—

> Pursuant to agreement of the parties in the above-entitled case, it is
>
> ORDERED and DECIDED: That there is a deficiency in estate tax due from the petitioner in the amount of $60,786.80.

On this document there was also a space for the signature of a judge of the Tax Court and a further stipulation at the bottom of the decision with spaces for signing by Taxpayer's attorney and for a signature by the Chief Counsel of the Internal Revenue Service. Neither the Tax Court nor the Chief Counsel ever affixed their signatures to these documents.

The March 10, 1983, form letter signed by Appeals Officer Best and sent to Taxpayer's attorney also stated:

> I have prepared a proposed stipulation-decision document to be filed with the United States Tax Court reflecting the agreement we reached during consideration of your case. If you approve, please sign and return the original and one copy of the stipulation-decision document. Individual petitioners should sign the stipulation exactly as the names appear in the case caption. The remaining copy of the document and the copy of the statement of income tax changes (if enclosed) are for your files.

The letter further recited that "the settlement we reached … has been approved," and then stated that "after approval, the stipulation is forwarded to District Counsel for filing with the Tax Court. The Tax Court will notify you at entry of the stipulation."

On March 14, 1983, Taxpayer's attorney signed and hand delivered the decision document to Appeals Officer Best. On April 6, 1983, Taxpayer mailed to Appeals Officer Best a check made payable to the Internal Revenue Service in the amount of $60,786.80 with a letter that this check was to pay the tax due on the estate of Ralph L. Jones. The check was thereafter negotiated by the Internal Revenue Service District Director's Office. On April 11, 1983, Appeals Officer Best again wrote to Taxpayer's attorney. The letter advised that the settlement had been approved and that the stipulated decision had been forwarded to the District Counsel for filing with the United States Tax Court.

On June 1, 1983, Taxpayer's attorney returned a call made to him on May 31, 1983, by Appeals Officer Best. During the conversation, Mr. Best informed the attorney that the decision document would not be executed on behalf of the Internal Revenue Service. Mr. Best explained that there was an inaccurate statement in the protest which Taxpayer had filed in 1981 with respect to the mortgage on the Cedarbrook Apartments.

In this protest, Taxpayer had represented that, "also in February of 1979, it was impossible to assume existing FHA mortgages." Taxpayer also had represented that, "Much of the value of the Cedarbrook Apartment in 1981 was attributable to the $2,200,000.00 7% [FHA] mortgage which could be assumed in the summer of 1981, but which could not be assumed in February of 1979." Taxpayer now concedes that these statements were inaccurate. The parties now appear to agree that in February, 1979, the alternative valuation date elected by Taxpayer, Federal Housing Administration mortgages on apartments such as Cedarbrook could be assumed by a

responsible person who was acceptable to the mortgagee and the FHA; the FHA did consider and allow, on a case-by-case basis, second mortgages in hardship cases and cases involving extenuating circumstances.

It was upon becoming aware of these facts that Appeals Officer Best informed the Taxpayer's attorney that the decision document would not be filed with the Tax Court. Mr. Best also suggested that Taxpayer should revise her proposal of settlement to reflect an increased value of the Cedarbrook Apartments due to the assumability of the FHA mortgage. Taxpayer's attorney advised Mr. Best that Taxpayer would insist upon consummation of the settlement previously agreed upon.

On June 14, 1983, Taxpayer filed a "Motion for Order of Settlement" which the Tax Court characterized as "Petitioner's Motion for Entry of Decision." In her motion, and at oral argument, Taxpayer took the position that at the time Appeals Officer Best negotiated the settlement and at the time of the approval of that settlement, the exclusive jurisdiction to settle this case was in the Appeals Officer and his superior under the provisions of 26 C.F.R. § 301.7701–9 (1983); 26 C.F.R. § 601.106 (1983); Delegation Order No. 60 (rev. 5), 1979–2 C.B. 482; and Delegation Order No. 66 (rev. 10), 1980–1 C.B. 571, as supplemented and amended by Delegation Order No. 190, 1982–1 C.B. 350. Taxpayer contended that pursuant to these regulations Appeals Officer Best settled the case with her attorney in accordance with the grant of exclusive jurisdiction to the Regional Commissioners or their delegates to settle cases pending before the United States Tax Court for a period of four months. Taxpayer also maintained that, although these regulations call for the signing of the stipulation on behalf of the Chief Counsel of the Internal Revenue Service by a properly authorized Regional or District Counsel, this requirement is "purely a ministerial function" and should have no effect on the validity of the settlement signed by Appeals Officer Best.

On January 31, 1984, the Tax Court issued a Memorandum Opinion denying Taxpayer's Motion for Entry of Decision. *Estate of Ralph L. Jones, deceased, Zepha H. Jones, Executrix v. Commissioner of Internal Revenue*, T.C.M. (P–H), 1984–53. The Tax Court based its decision on two alternative grounds: first, the court held that the settlement was not validly executed because "[t]he decision document was never filed with the Court and never signed by or on the behalf of the Chief Counsel, who is the representative of the Commissioner in this Court." The court also held that even if the settlement was validly executed, it should not be enforced in this case because the settlement was agreed upon by Appeals Officer Best in reliance on a misstatement of fact by Taxpayer's counsel. Moreover, "[a]ssuming the misstatement of fact was totally unintentional on the part of [Taxpayer's] counsel, we conclude that the settlement was based on a mutual mistake of fact. The fact was a very material one in that, as [Taxpayer's] attorney argued in the protest in which the inaccurate statement was made, the financing arrangements in connection with an apartment complex have great influence on the value of the property." [2] Accordingly, the Tax Court denied Taxpayer's Motion for Entry of Decision. This appeal followed.

## I.

Taxpayer's first ground for reversal is that the Tax Court erred when it concluded that the settlement agreement was not validly executed and was therefore unenforceable. Taxpayer insists that a valid settlement agreement was negotiated and signed

**2.** In reaching this conclusion, the Tax Court relied upon Rule 91(e) of the Tax Court Rules of Practice and Procedure, which provides in part:
(e) *Binding Effect.* A stipulation shall be treated, to the extent of its terms, as a conclusive admission by the parties to the stipulation, unless otherwise permitted by the Court or agreed upon by those parties. *The Court will not permit a party to a stipulation to qualify, change, or contradict a stipulation in whole or in part, except that it may do so where justice requires.* (Emphasis added).

by Appeals Officer Best. Taxpayer urges that Officer Best's authority derived from the Appeals Division's exclusive jurisdiction to settle cases under 26 C.F.R. § 601.106, and further, that Appeals Officer Best had authority to enter into the settlement agreement under sections 7122(a), and 7701(a), of the Internal Revenue Code and under the Internal Revenue's Delegation Orders Nos. 60, 66, and 190, *supra.* Taxpayer asserts, therefore, that the settlement agreement should be enforced.

The Internal Revenue Code of 1954 clearly authorizes the settlement of "any civil or criminal case arising under the internal revenue laws...." 26 U.S.C. § 7122(a). Moreover, the Internal Revenue's Appeals Office is provided with the exclusive jurisdiction to settle cases under specified circumstances. The procedures to be followed by the Appeals Office in settling cases are set out at 26 C.F.R. § 601.106. This section states in part that:

> After the filing of a petition in the tax court, the Appeals Office will have exclusive settlement jurisdiction ... for a period of 4 months (but no later than the receipt of the trial calendar in regular cases ...), over cases docketed in the Tax Court.

26 CFR § 601.106(a)(1)(i). Section 601.106(d)(3)(iii)(a) further states:

> The Appeals office will have exclusive settlement jurisdiction for a period of 4 months over certain cases docketed in the Tax Court. The 4 month period will commence at the time Appeals receives the case from Counsel, which will be after the case is at issue. Appeals will arrange settlement conferences in such cases within 45 days of receipt of the case. In the event of a settlement, Appeals will prepare and forward to Counsel the necessary computations and any stipulation decisions secured. Counsel will prepare any needed settlement documents for execution by the parties and filing with the Tax Court.

At the outset, it should be noted that the parties are in disagreement as to whether their dispute was actually settled by Ap-

peals Officer Best during the four-month period in which the Appeals Office had exclusive jurisdiction to settle the case. Taxpayer's case was referred to the Appeals Office by District Counsel in late November of 1982, and the trial calendar was issued by the Tax Court on March 22, 1983. Thus, the Appeals Office had exclusive jurisdiction to settle the case only during the four-month period prior to March 22, 1983.

Taxpayer maintains that the settlement became final and binding on March 10, 1983, when Appeals Officer Best sent a letter to her counsel notifying him that the settlement had been approved. This letter states in part:

> Dear Mr. Housholder:
>
> I have prepared a proposed stipulation-decision document to be filed with the United States Tax Court reflecting the agreement we reached during consideration of your case. If you approve, please sign and return the original and one copy of the stipulation decision document. Individual petitioners should sign the stipulation exactly as the names appear in the case caption. The remaining copy of the document and the copy of income tax charges (if enclosed) are for your files. An envelope is enclosed for your convenience.
>
> The settlement we reached,
>
> X has been approved:
>
> > has not yet been approved, and we will notify you upon approval or disapproval.
>
> After approval, the stipulation is forwarded to District Counsel for filing with the Tax Court. The Tax Court will notify you of entry of the stipulation.

■ The Commissioner contends that this letter is ambiguous because, although it states that the settlement "has been approved," it also indicates that "after approval" additional steps are to be taken by District Counsel. According to the Commissioner, it was not until the letter of April 11, 1983, that Appeals Officer Best actually informed Taxpayer's attorney that

the settlement had been approved. In part, this letter states:

Dear Mr. Housholder:

The proposed settlement you reached with the Appeals Officer, as reflected in the stipulation-decision document, has been approved. We have forwarded the stipulation you signed to District Counsel for filing with the United States Tax Court.

The Commissioner maintains that because this letter was not written until April 11, 1983, the Appeals Office had lost its exclusive jurisdiction to settle the case.[3]

█ There may be some merit to the Commissioner's argument, but we find it unnecessary to resolve this issue because, even if we assume that the settlement was approved pursuant to the Appeals Office's exclusive jurisdiction under the Statement of Procedural Rules, 26 C.F.R. § 601.106, it does not in our view invariably follow that this settlement is binding upon the government.[4] Indeed, the circuits have consistently held that the Internal Revenue's Statement of Procedural Rules is only directory and not mandatory. *See Einhorn v. DeWitt,* 618 F.2d 347 (5th Cir.1980); *Rosenberg v. Commissioner of Internal Revenue,* 450 F.2d 529 (10th Cir.1971); *Luhring v. Glotzbach,* 304 F.2d 560 (4th Cir.1962).

In *Cleveland Trust Co. v. United States,* 421 F.2d 475 (6th Cir.), *cert. denied,* 400 U.S. 819, 91 S.Ct. 35, 27 L.Ed.2d 46 (1970), our court reached a similar conclusion when it held that the I.R.S.' Revenue Procedures are directory and not mandatory. In that case, Taxpayers sought a refund of certain estate tax deficiencies paid to the I.R.S. In seeking this refund, Taxpayers sought to bind the I.R.S. by an informal conference agreement which was subsequently rejected by the I.R.S. in violation of its own Revenue Procedure 60–24(5)(.04),

1960 C.B. 60–24. This procedure limited rejection of informal conference agreements to circumstances involving "clearly defined error." Taxpayer argued that because the I.R.S. failed to identify a "clearly defined error" it was precluded from rejecting the agreement. Our court, however, rejected this argument, stating:

Without reaching the question of whether the responses by the IRS to the estate's requests for identification of the "clearly defined error" were in fact sufficient, we must hold that the IRS was not required by the Revenue Procedures to identify the error for which the informal conference agreement was rejected. *It is clear that the above quoted Revenue Procedure is directory, not mandatory, and the IRS's alleged failure to sufficiently identify the error cannot affect its right to assert a deficiency against the estate. See Geurkink v. United States,* 354 F.2d 629 (7th Cir.1965); *Luhring v. Glotzbach,* 304 F.2d 560 (4th Cir.1962). Whatever deficiencies there may have been in the identification of the "clearly defined error" for which the agreement was rejected, the IRS was not foreclosed from rejecting the agreement by its own Revenue Procedures.

*Id.* at 481–82. (Emphasis added). *Cleveland Trust* therefore supports the proposition that even if the settlement was approved by Appeals Officer Best during the period over which the Appeals Office had exclusive jurisdiction, section 601.106 of the Statement of Procedures does not preclude the Commissioner from subsequently rejecting the settlement.

Although Taxpayer concedes that the Internal Revenue's Statement of Procedure is only directory, she insists that the settlement became binding once it was submitted to and approved by a proper reviewing

---

3. It is clear that a settlement which has been approved outside of the Appeals Office's exclusive jurisdiction is nonbinding. Section 601.106(d)(3)(iii)(*b*) states:

At the end of the 4-month period, or before that time if Appeals determines the case is not susceptible of settlement, the case will be returned

to Counsel. Thereafter, Counsel will have exclusive authority to dispose of the case.

4. The Tax Court also was willing to assume that the Appeals Office approved the settlement during the period over which it had exclusive jurisdiction to settle this case.

officer in the Appeals Office. In this respect, Taxpayer relies heavily on the case of *Gardner v. Commissioner of Internal Revenue*, 75 T.C. 475 (1980), wherein the Tax Court stated:

> With respect to cases docketed in this Court, the Commissioner has delegated exclusive settlement authority to the Regional Commissioners for the period of 4 months from the time after which the case is at issue and the Appeals officials receive the case from the Chief Counsel's delegate. Internal Revenue Delegation Order No. 60 (rev. 5), 1979–2 C.B. 482. By Delegation Order No. 66 (rev.), 1979–2 C.B. 483 (current revision at 1980–1 C.B. 571), the Commissioner authorized the Chief and Associate Chief of each Appeals Office to perform the settlement functions delegated to the Regional Commissioners. See generally Rev. Proc. 79–59, 1979–2 C.B. 573; Statement of Procedural Rules sec. 601.-106(a)(1), 26 C.F.R. sec. 601.106(a)(1) (1980). Appeals officers, such as Mr. McMahon, do not appear to have been delegated settlement authority, and petitioners thus cannot rely on Mr. McMahon's preliminary approval of the settlement stipulation as being binding on the Commissioner. Furthermore, we think that the Procedural Rules, fairly construed, indicate that no settlement is binding unless approved by a reviewing officer in the Appeals Office or at the very least submitted to him for consideration.

*Id.* at 478–79. Taxpayer argues that this passage and the Delegation Orders cited therein prove that the "Appeals Office did have the actual authority from the Secretary of Treasury to settle Tax Court cases." Taxpayer also points out that Appeals Officer Best approved the settlement on form letters supplied by the Appeals Office. From this, Taxpayer infers that a properly authorized reviewing officer must have agreed to the settlement, for otherwise Appeals Officer Best would not have sent the letters.

■ While it may be assumed that the Appeals Office is authorized to settle cases on behalf of the Chief Counsel, we believe it proves too much to say that the mere use of form letters by an Appeals Officer demonstrates that a settlement was actually approved by the Appeals Office. Indeed, in *Gardner*, the Tax Court stated that "a settlement proposal must at least be submitted to the reviewing officer, and ... such officer must take *affirmative action* in either rejecting or approving the proposal before it can be taken as binding on the I.R.S." 75 T.C. at 479 (emphasis added). In the instant case, there is little, if any, evidence that a reviewing officer took any affirmative action in approving the settlement negotiated by Appeals Officer Best.

We also note that section 601.106 of the Statement of Procedural Rules contemplates shared reponsibility between the Appeals Office and the District Counsel in settling cases. Thus, section 601.-106(d)(3)(iii)(*c*) states: "During the period of Appeals jurisdiction, Appeals will make available such files and information as may be necessary for Counsel to take any action required by the court or which is in the best interests of the Government." Section 601.106(d)(3)(iii)(*d*) further provides that:

> The Appeals office may specify that proposed Counsel settlements be referred back to Appeals for its views. Appeals may protest the proposed Counsel settlements. If Counsel disagrees with Appeals, the Regional Counsel will determine the disposition of the cases.

These provisions plainly contemplate participation by both the Appeals Office and the District Counsel in settlement proceedings. Under these provisions, moreover, it would appear that the District Counsel might be permitted to reject a settlement negotiated by the Appeals Office if in the "best interests of the Government." In our view, the result should not be any different where, as here, the Appeals Office itself discovers the error.

■ Taxpayer, however, would apparently have us hold that if a reviewing officer in the Appeals Office had approved the proposed settlement, it is binding on the

Commissioner without regard for whether the District Counsel agrees with the settlement or whether the stipulation has been filed with the Tax Court. The Tax Court was unwilling to accept such a view, particularly where "no settlement had been suggested in any hearing, either formal or informal, before [the] Court."

In reaching this conclusion, the Tax Court relied on *Cole v. Commissioner*, 30 T.C. 665 (1958), *aff'd*, 272 F.2d 13 (2nd Cir.1959). In *Cole*, Taxpayer sought to enforce a proposed stipulation allegedly agreed upon between himself and the Chief Counsel but subsequently rejected by the Commissioner. Although there was disagreement as to whether the Chief Counsel or his authorized representative had actually signed the stipulation, the Tax Court found it unnecessary to resolve this issue.

> But where, for whatever reason, the parties are not in agreement at the time the case is called for trial, it is wholly irrelevant in this connection that they may have been in agreement at some earlier time. The inquiry into whether respondent's Chief Counsel had "signed" the stipulations in this case is therefore beside the point. Furthermore, the mere signing of a paper, while retaining custody of it, does not necessarily render it an operative document. Until it is delivered or until some appropriate action is taken with respect thereto, it is far from clear that the signer may not scratch out his signature.

*Id.* at 674. The Tax Court in *Cole* therefore refused to enforce the stipulation.

Taxpayer argues that this language is dicta, and in any event does not reflect the current status of the law. In this respect, Taxpayer cites numerous cases holding that a federal court may enforce a settlement even though no settlement has been suggested in any hearing, either formal or informal. *See Kukla v. National Distillers Products Co.*, 483 F.2d 619 (6th Cir. 1973), and cases cited therein at 621. Taxpayer also correctly observes that court policy favors settlement of disputes without litigation and cites authority that a court *may* enforce a settlement even though reached privately and not in any hearing. *See Odomes v. Nucare, Inc.*, 653 F.2d 246, 252 (6th Cir.1981); *Aro Corporation v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir.), *cert. denied*, 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976); *Kukla v. National Distillers Products Co.*, 483 F.2d at 621.

Were we passing upon a settlement agreement independently reached by ordinary litigation, we might very well have concluded that it should be enforced. After all, Taxpayer had already paid in what she considered the agreed sum. The I.R.S. had deposited and kept the money; the negotiating posture of the parties was thereby changed. Further, the misunderstanding itself was in a sense judgmental rather than the ordinarily hard evidentiary disagreement. The disputed issue related to matters of policy in another governmental agency and it is difficult to understand at times how one arm of the government can take advantage of its own ignorance of what another arm is doing. The Tax Court, however, determined that under the circumstances of the instant case, the settlement was not validly executed because it was never filed with the court and never signed by or on behalf of the Chief Counsel. We cannot say that the Tax Court erred as a matter of law in reaching this conclusion.

## II.

Even if it is assumed that the settlement agreement between the Taxpayer and Appeals Officer Best was validly executed, the Tax Court held in the alternative that it would not enforce the agreement in the instant case because the case was settled by the Appeals Officer in reliance on a misstatement of material fact by Taxpayer's counsel. This was its ruling, the Tax Court noted, even if the misstatement of fact was "totally unintentional on the part of [Taxpayer's] counsel."

■ It is well settled that a valid settlement agreement may be set aside on one of two grounds, either fraud or mutual mis-

take of fact. *See Callen v. Pennsylvania R. Co.*, 332 U.S. 625, 630, 68 S.Ct. 296, 298, 92 L.Ed. 242 (1948); *see also Cheyenne-Arapaho Tribes of Indians of Oklahoma v. United States*, 671 F.2d 1305, 1311 (Ct. Cl.1982). Indeed, the Internal Revenue Service's regulations expressly provide that a compromise may be set aside on the grounds of fraud or mutual mistake. 26 C.F.R. § 301.7122–1(c) (1983). This section states in part: "Neither the taxpayer nor the Government shall, upon acceptance of an offer in compromise, be permitted to reopen the case except by reason of (1) falsification or concealment of assets by the taxpayer, or (2) mutual mistake of a material fact sufficient to cause a contract to be reformed or set aside."

■ Here, Taxpayer filed a protest on December 11, 1981, after the District Director proposed certain changes in the value of the estate assets reported. The protest submitted by Taxpayer to the Appeals Office of the Internal Revenue Service stated:

> Also in February of 1979, it was impossible to assume existing FHA mortgages. In the summer of 1981, just before the three proposals to purchase apartments were made, the loan was changed, allowing the assumption of FHA mortgages. Much of the value of the Cedarbrook Apartments in 1981 was attributed to the $2,200,000.00 7% mortgage which could be assumed in the summer of 1981, but which could not be assumed in February of 1979.

Taxpayer does not dispute that these statements were inaccurate. Indeed, evidence was introduced that in February of 1979, Federal Housing Administration mortgages on apartments such as Cedarbrook could be assumed by a responsible person who was acceptable to the mortgagee and the FHA. Evidence was also introduced that the FHA considered and allowed, on a case-by-case basis, second mortgages in hardship cases and cases involving extenuating circumstances. Most important, the parties stipulated in the Tax Court that Appeals Officer Best relied upon the last sentence above-quoted in giving his approval to the purported settlement agreement. We believe it is apparent from the record that the Tax Court's finding that Appeals Officer Best relied upon the statement of facts concerning the assumability of the mortgage is not clearly erroneous.

Taxpayer also appears to argue that even if there was in fact reliance, that reliance was unreasonable and the I.R.S. should not be permitted to advance such a theory in support of its efforts to avoid keeping its proposed bargain. Taxpayer's logic is that, since the assumability of FHA mortgages was a matter primarily of federal law, the I.R.S., as a federal agency, should have relied upon its own knowledge of the assumability of mortgages on that date and did not reasonably rely upon any representation of the Taxpayer who was, if anything, even less familiar with federal law than the I.R.S. should have been. This argument suggests that the I.R.S. should somehow be estopped from making the claim because of some presumption that it was bound to be more familiar with the law of another agency of the government than the Taxpayer.

We know of no such authority to support this theory, and of course equitable estoppel generally does not run against the federal government. *See United States v. City and County of San Francisco*, 310 U.S. 16, 31–32, 60 S.Ct. 749, 757, 84 L.Ed. 1050 (1940); *Utah Power and Light Co. v. United States*, 243 U.S. 389, 408–09, 37 S.Ct. 387, 391, 61 L.Ed. 791 (1917); *Housing Authority of Elliot County v. Bergland*, 749 F.2d 1184, 1190 (6th Cir.1985); *United States v. Glidden Co.*, 119 F.2d 235, 245–46 (6th Cir.), *cert. denied*, 314 U.S. 678, 62 S.Ct. 182, 86 L.Ed. 542 (1941). In *Bergland*, we noted that: "Estoppel, if applied in this situation, might permit a misinformed or overly generous government official to give away assets or funds that the government holds for the public good under congressional mandate." 749 F.2d at 1190. Much of the same can be said here.

Where, as here, the mutual mistake was initiated by Taxpayer and actual reliance by the government is established, Taxpayer's claim in this regard is unsupportable, either as a matter of federal case law or as a matter of logic. At best, Taxpayer has lost the advantage of a bargain which was unfair to the government in the first instance. We see no injustice in denying the benefit of that bargain where it was achieved by misrepresentation, whether intentional or innocent.

### III.

In the last analysis, we conclude that the Tax Court was not precluded as a matter of law from refusing to honor the settlement agreement or from holding that finality was not established until the formalities of filing in the Tax Court and signing on behalf of the Chief Counsel had been observed. The IRS is unquestionably one of the largest federal agencies in existence and there is the constant danger that without careful observance of formalities, the tax laws and the policies of the United States with respect to those laws will not be uniformly and fairly applied.

AFFIRMED, but without costs.

NATHANIEL R. JONES, Circuit Judge, concurring in part and dissenting in part.

The majority holds in Part I of this opinion that the Commissioner is not bound by the settlement at issue here either under the Internal Revenue Service's Statement of Procedural Rules or by more common rules regarding settlements in litigation. Because I believe this holding carves out an exception for the Commissioner unsupported by the law, I dissent from Part I of this opinion.

At the outset, I must clarify my understanding of the first issue as presented to us. The majority concludes that the Statement of Procedural Rules is merely directory, and as such, the Commissioner cannot be bound to a settlement pursuant to those rules. With this conclusion, I am in agreement. Indeed, these rules were adopted exclusively for the internal use of the IRS,

and do not confer any cognizable rights upon the taxpayer. *Cf. United States v. Will,* 671 F.2d 963, 967 (6th Cir.1982). I want to emphasize, however, the inconsistent application of this rule implied in the majority opinion. Through its interpretation of *Gardner v. Commissioner,* 75 T.C. 475, 478–80 (1980), the majority opinion may be understood as implying that the result may have been different if there had been evidence that a properly authorized reviewing officer had approved the settlement, rather than the proposed settlement being submitted via form letters. This case is not predicated on the procedural rules. We cannot hold that the procedural rules are only for the internal administration of the IRS, then rely on a case interpreting these procedures to require that a reviewing officer approve the settlement before it can be rendered binding upon the IRS. In other words, we cannot say the rules do not bind the Commissioner, and then charge the taxpayer with the knowledge that the Appeals Officer does not have the apparent authority, under these rules, to enter a binding settlement. I recognize that the majority may have been simply responding to the arguments raised by the taxpayer with respect to the rules, but the potential for a later misconstruing of the majority's rationale compelled me to offer this caveat.

Thus, I would place the focus of the majority's analysis on the last four paragraphs in Part I. A resolution of this issue could arise under the normal rules regarding settlements in litigation matters. Contrary to the majority's opinion, I am aware of no statutory or case law that gives the Commissioner refuge from these norms, or that labels disputes filed in the Tax Court as anything other than ordinary litigation. As the Tax Court recognized, the government has, in fact, relied on the litigation process in binding a taxpayer to a settlement agreement. *See Kehoe v. United States,* (unreported decision) 44 AFTR 2d 79–5549 (P–H) (S.D.N.Y.1979) (settlement agreed to in writing by both parties). Therefore, once it is determined that no

special exemptions from the litigation rules are bestowed upon the Commissioner, this issue should now be reviewed in a decidedly different posture.[1]

It appears that a taxpayer would be placed with far too heavy a burden if we were to hold that he must recognize that an Appeals Officer does not have the apparent authority to enter a binding settlement agreement. In tax matters of this sort, the taxpayer's only contact with the Commissioner is through the Appeals Officer. In the eyes of the taxpayer, the Appeals Officer is the authorized representative of the Commissioner and it is only through his representations and direction that the taxpayer knows how to proceed. There is absolutely no evidence that Appeals Officer Best informed the taxpayer that the settlement was also subject to the approval of the District Counsel or the Tax Court. Nor does the form letter submitted to the taxpayer give such notification. All the letter states is that "the settlement we reached ... has been approved," and "after approval, the stipulation is forwarded to District Counsel for filing with the Tax Court." I do not believe these statements can be read as informing the taxpayer that the District Court or Tax Court had discretion to reject the settlement. If the Commissioner wanted to make the settlement subject to further approval, he could just as easily have provided a form letter stating so.

Even if I were to agree with the majority's interpretation of the letter, I remain convinced that the facts occurring after the alleged settlement was reached support the position that the Commission should be bound to the settlement. The taxpayer paid the sum agreed upon, and the IRS negotiated the check. As the majority admits, in the course of ordinary litigation, acceptance of the money after an otherwise fully agreed to settlement would have been binding on the acceptor absent a simultaneous disclaimer or condition. No such

disclaimer or condition was made when the check was accepted in this case.

I, too, recognize that the Commissioner's task is a monumental one and formality in the resolution of tax disputes is needed. But as I indicated earlier, it is a relatively simple matter for the IRS to provide in its letters that all settlements are subject to the approval of the District Counsel and the Tax Court, and to stipulate that no payment should be sent until those formalities are met.

---

1. The majority has already cited numerous cases where a settlement has been enforced absent any suggestion of settlement in a formal or informal court hearing, thus I do not restate them here.