FREDERICK A. AND LOUISE E. KEMP, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kemp v. Commissioner
Docket No. 1800-76.
United States Tax Court
T.C. Memo 1979-474; 1979 Tax Ct. Memo LEXIS 48; 39 T.C.M. (CCH) 558; T.C.M. (RIA) 79474; November 29, 1979, Filed Robert M. Tyle, for the petitioners. William S. Miller, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of Section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. *50 OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: Respondent determined an overpayment of $116.66 in petitioners' 1968 federal income tax and deficiencies of $887.89, $689.90, and $153.39, respectively, in petitioners' 1969, 1970, and 1972 federal income taxes. Concessions having been made on both sides, the sole issue remaining for decision is whether petitioners are entitled to a net operating loss deduction under section 172 for either 1969 or 1970, and, if so, the amount thereof. Resolution of the issue depends upon the amount of a casualty loss deduction under section 165(a) allowable for 1971 in excess of the amount allowed by respondent. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. Petitioners filed their joint 1968, 1969, 1970, and 1972 federal income tax returns with the Internal Revenue Service Center at Andover, Massachusetts. At the time the petition herein was filed, they resided in Corning, New York. Petitioners purchased a two-story, wood frame house in Corning, New York, in 1969. It had three bedrooms, a dining room, living room and kitchen. It was approximately 40 years old. Petitioners *51 paid $15,800 for the house, closing costs of $300 to $400, and made various capital improvements between the time they purchased it and June of 1972 which cost them approximately $2,900. The house was in very good condition in 1972. In June of 1972, hurricane Agnes struck the area and caused severe flooding and damage to petitioners' house. Approximately six feet of water covered the first floor. The back porch was washed away, the front porch steps were moved away from the house, and the front porch itself was sagging from being undermined. Shingles were torn from the garage. Windows on the west side of the house and all basement windows were broken. The house broke loose from its foundation and the main supporting beam was damaged. The floors sagged, doors swelled, walls were cracked and plaster fell. Everything in the cellar was destroyed. The cellar and grounds were covered with mud and debris. After the flood, petitioners and their family and friends cleaned the house out and made repairs. The repairs did not restore the house to as good condition as it was in before the flood. They have spent $11,000 for materials to make the repairs. Petitioner Frederick A. Kemp *52 took three weeks off from work immediately after the flood and thereafter worked on the house 5 or 6 hours each evening and 15 to 16 hours a day on weekends. It was April of 1973 before petitioners moved back into the house. In the interim, they lived in a trailer placed on the property by the Department of Housing and Urban Development. The fair market value of the home was $20,000 immediately before the flood and $7,000 immediately thereafter. The house had an adjusted basis in petitioners' hands in excess of $13,000. Petitioners received a disaster loan from the Small Business Administration. Sometime thereafter, the Small Business Administration forgave repayment of $5,000 of the loan. Petitioners filed an amended 1971 federal income tax return [3] on which they claimed a casualty loss of $33,975.29, as follows: Damage to residence
$18,700.00
Damage to personal property
15,375.29
$34,075.29
Less sec. 165(c)(3) limitation
100.00
$33,975.29
Respondent determined that petitioners' loss was $16,882.30, as follows: Loss to real property
$ 6,446.30
Loss to personalty
15,375.00
Loss of work tools (claimed on
1972 return)
261.00
Total
$22,082.30
Less: SBA loan forgiveness $5,000.00
Sec. 165(c)(3) limitation 100.00
5,100.00
$16,982.30
*53 Petitioners now concede that the amount of their claimed loss shuld be reduced by $5,000; i.e., the amount of the SBA indebtedness which was forgiven. OPINION Section 165(a) permits individuals to deduct losses suffered upon the damage to or destruction of nonbusiness property by reason of fire, storm, shipwreck or other casualty to the extent that the loss from each casualty not compensated for by insurance or otherwise exceeds $100. See sec. 165(c)(3). The proper measure of the loss sustained is the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, but not to exceed its adjusted basis. See Helvering v. Owens, 305 U.S. 468 (1939); Millsap v. Commissioner, 46 T.C. 751, 759 (1966), affd. 387 F.2d 420 (8th Cir. 1968); sec. 1.165-7(b)(1), Income Tax Regs. Physical damage to property caused by a flood is clearly a casualty within the purview of section 165(c)(3), and respondent concedes that petitioners suffered some such damage. Respondent does not contest petitioners' claim of the value of their personalty lost in the hurricane. Petitioners *54 now concede that the amount of the loss should be reduced by the amount ($5,000) of the SBA loan forgiveness. The only dispute is the amount of the loss to petitioners' realty, respondent contending that petitioners have failed to show the decrease in fair market value of petitioners' house and to establish its basis, while petitioners assert that they have met their burden of proof. The questions to be resolved, then, are: (a) the amount of the actual loss sustained to the realty and (b) its adjusted basis in petitioners' hands. The burden of proving these amounts rests with petitioners. Pfalzgraf v. Commissioner, 67 T.C. 784, 787 (1977); Axelrod v. Commissioner, 56 T.C. 248, 256 (1971). To establish the amount of the casualty loss, the relevant fair market values "shall generally be ascertained by competent appraisal." Sec. 1.165-7(a)(2)(i), Income Tax Regs. Petitioners obtained appraisals of the fair market value of the house before and after the flood from two local real estate agents. The testimony of neither is before the Court and their appraisal reports do not state on what method or methods they were based. The circumstances are such *55 here that we draw no inference from the absence of their testimony that the testimony of these persons would be unfavorable to petitioners, but neither can we give their appraisals any weight. The opinion of a landowner as to the value of his or her property is admissible in evidence without further qualification because of the owner's special relationship to that property. District of Columbia Redevelopment Land Agency v. 13 Parcels of Land, 534 F.2d 337, 339-340 (D.C. Cir. 1976); United States v. Sowards, 370 F.2d 87, 92 (10th Cir. 1966); Kinter v. United States, 156 F.2d 5 (3d Cir. 1946); Harmon v. Commissioner, 13 T.C. 373 (1949); see also Fed. R. Evid. 701; 2 Jones, Evidence, sec. 14:6, p. 599 (6th ed. 1972); 3 Wigmore, Evidence, sec. 714, p. 50 (1970 rev.). But, we are not bound to accept that testimony at face value, even though it is uncontradicted, if it appears to be improbable, unreasonable, or offered solely to serve the self-interests of the taxpayer. See Fixel v. Commissioner, T.C. Memo. 1974-197, affd. without opinion 511 F.2d 1400 (5th Cir. 1975); *56 cf. United States v. 3,698.63 Acres of Land, Etc., 416 F.2d 65 (8th Cir. 1969). While the owners of property are competent to testify as to its value, the weight to be given their testimony will depend upon their knowledge, experience, method of valuation, and other relevant considerations. Biddle v. United States, 175 F. Supp. 203, 204 (E.D. Pa. 1959); see Jenny v. Commissioner, T.C. Memo. 1977-142. Petitioner Frederick A. Kemp testified that the house had a fair market value of $20,000 immediately prior to the flood. He also testified that the property was worthless immediately after the flood. On the latter point, it is obvious that his emotions played a part. [4] While we are willing to accept his appraisal of the property's fair market value immediately prior to the flood, we firmly believe that the property had some fair market value immediately after the flood, disregarding as we must the temporary fluctuation in value due to emotions. Cole v. Commissioner, 30 T.C. 665 (1958). The matter is not susceptible of precise determination on this record, but, doing the best we can with the information before us, *57 we have found that the property had a fair market value of $7,000 immediately after the flood. Accordingly, we find that the loss suffered to petitioner's realty was $13,000. The adjusted basis of the property in petitioners' hands clearly exceeded that amount. Sec. 1011(a). Thus, we hold that petitioners are entitled to a casualty loss deduction for 1971 in the amount of $23,536. [5]
* * *
In accordance with the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. See sec. 165(h).↩
4. In response to his attorney's question, "Were you mad at it [i.e., the property]," petitioner Frederick A. Kemp responded, "Very." ↩
5. ↩
Loss to realty
$13,000
Loss to personalty
15,636
Subtotal
$28,636
Less: SBA loan forgiveness
$5,000
Sec. 165(c)(3) limitation
100
5,100
Deductible loss
$23,536