ROSS W. AND MARIE H. ROHN, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Rohn v. Commissioner
Docket No. 11639-89, 17958-91, 23790-89, 27905-91
United States Tax Court
T.C. Memo 1994-244; 1994 Tax Ct. Memo LEXIS 248; 67 T.C.M. (CCH) 3030; May 31, 1994, Filed *248 For petitioners: Pasquale P. Caiazza. For respondent: Stephen J. McFarlane. FAY, NAMEROFF
FAY
MEMORANDUM OPINION FAY, Judge: These cases were consolidated for briefing and opinion and were assigned to Special Trial Judge Larry L. Nameroff pursuant to section 7443A(b) [2] and Rules 180, 181, 182, and 183. The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE NAMEROFF, Special Trial Judge: Respondent determined deficiencies in income taxes, additions to tax, and additional interest as follows: ROSS W. AND MARIE H. ROHN Additions to Tax
Year
Docket No.
Deficiency
Sec. 6653(a)(1) Sec. 6659 Sec. 6621(c) 1981
11639-89
$ 9,999
[1] $ 500
$ 3,000
[2]
WILLIAM D. AND LINDA R. WEIRICH 1981
23790-89
$ 7,551
[1] $ 377.55
$ 1,510.20
[2]
1983
27905-91
4,033
[1] 202.00
--
[2]
DEAN AND NELLIE Q. JEW
1983
17958-91
$ 4,171
[1] $ 208.55
$ 1,251.30
[2]
*249 These cases involve the tax shelter project known as Vacation Homes International and are before the Court on cross-motions for entry of decision. These cases were calendared for trial in Los Angeles, California, at a trial session commencing January 18, 1994. Prior to the calendar, the parties had a conference call with the Court, in which it was agreed that the cases would be submitted on said cross-motions, and, counsel for petitioners agreed that if petitioners' motion for entry of decision were denied, the cases would be conceded by petitioners. The issue presented by petitioners' motion is whether certain alleged settlement agreements should be enforced by the Court. Respondent's motion for entry of decision prays for decisions for the full amounts set forth in the notices of deficiency. Petitioners allege in their motion for entry of decision that an offer from the Appeals Division dated December 29, 1988, was accepted by petitioners and should be enforced; alternatively, petitioners contend that a second, later settlement offer should be confirmed. Petitioners' motion is supported by an affidavit of petitioners' attorney, plus 11 exhibits of various correspondence between *250 Mr. Caiazza (Caiazza), or his clients, and respondent. Respondent contends that no settlement offers were accepted by petitioners, and, therefore, the cases should be deemed conceded in full. Respondent's motion and objection to petitioners' motion are supported by 12 exhibits of correspondence (including 2 duplications of petitioners' exhibits). Inasmuch as the various exhibits pertain only to specific taxpayers, it is necessary to sort them out by taxpayer in order to understand the facts in this case. Dean and Nellie Q. Jew (hereinafter the Jews)
On December 29, 1988, Appeals Officer Lloyd West, Jr. (West), wrote directly to the Jews [3] in connection with taxable years 1981 and 1982, and, inter alia, a partnership entitled Green Jade Properties. In that letter he set forth an offer to settle the Jews' tax liabilities for the 1981 and 1982 tax years. The initial paragraph of the letter stated: The Appeals Division's settlement offers on the tax shelters in which you invested is(are) attached. This settlement is Appeals FINAL OFFER and is being made to all investors. Chief Counsel has advised us that this is the most favorable settlement offer you can expect to *251 receive from any level of the Service. It may be withdrawn or modified based upon subsequent developments.
Attached to the letter was a settlement statement with regard to Green Jade Properties (which apparently had invested in Vacation Homes International). The settlement statement provided for the allowance of deductions in the first year for "miscellaneous" expenses, if paid, as well as depreciation and investment tax credit as claimed. In subsequent years, taxpayers would be entitled to deductions for "economic interest", as well as miscellaneous expenses and depreciation. In addition, as is significant here, *252 the attachment stated that the Internal Revenue Service would concede the additions to tax under sections 6653(a) and 6659, as well as the interest attributable to tax motivated transactions under section 6621(c). Another attachment to West's letter requested submission of additional information; viz, verification of allowable payments, copies of tax returns for 1979 and 1980, and copies of Schedules K-1. In a letter dated February 22, 1989, Caiazza responded to West's settlement offer stating, in part: The purpose of this letter is to conditionally accept, on behalf of our clients, your Settlement Offer, dated December 29, 1988, as it pertains to Green Jade Properties. * * * Before an unconditional acceptance will be granted, our clients and this office wish to review and approve the proposed tax adjustments for each of the years in question. Therefore, please prepare the tax adjustments and forward same to this office. [Emphasis added.]
On March 15, 1989, West wrote to the Jews (with a "cc" to Caiazza) requesting copies of Green Jade Enterprises' [4] 1981 and 1982 Forms 1065 so as to "enable us to complete the settlement of your case." On May 24, 1989, Caiazza sent *253 West the requested information. Thereafter, by letter dated June 5, 1989, West informed the Jews that the settlement offer previously made on December 29, 1988, was in error in that the Jews were to have conceded the additional interest under section 6621(c) rather than the Government. The letter stated: Per telephone conversation held with your representative Mr. Caiazza on June 2, 1989, he is not in agreement with the changes to item 3 [sec. 6621(c) interest] reflecting the correct settlement offer. Based on Mr. Caiazza's letter dated February 22, 1989, an unconditional acceptance of the settlement offer in respect to Green Jade Properties was not granted. Therefore, the Government can [sic] not be bound to an offer made which was never accepted.
In your case, we have no alternative but to issue a statutory notice of deficiency.
By letter dated June 21, 1989, Caiazza responded *254 to the June 5 letter, stating that the case should be considered settled and that the conditional portion of the acceptance was only with regard to the computation of the tax. The letter stated in pertinent part: Your statement that the Government's Offer was never accepted is incorrect. As you know, there are two (2) parts of every Settlement Offer. These parts consist of the terms of the Offer, and the dollar amount of taxes to be paid, which is computed on the terms. Our letter, dated February 22, 1989, accepted the terms of the Offer. However, due to the fact that the Offer was not mailed with a tax computation, we could not set forth our acceptance to the second part of the Offer. For this reason, the word "conditionally" was used in our letter. If we had unconditionally accepted your Offer, you would have been able to forward a Statement of tax adjustments, which our clients would have been forced to pay without question, even if the computation was incorrect.
On May 13, 1991, respondent mailed the notice of deficiency for 1983 to the Jews. There is no indication in the record as to the disposition of the 1981 and 1982 taxable years. The next chronological exhibit *255 pertaining to settlement for the Jews is a letter dated March 25, 1992, from Appeals Officer William A. Keebler (Keebler) to Caiazza requesting additional information. By letter dated April 26, 1993, Caiazza sent the additional information to respondent's counsel, wherein he stated his contention that he had previously accepted, on behalf of his clients, the December 29, 1988, settlement offer. Finally, on December 17, 1993, respondent sent settlement documents to the Jews' counsel reflecting full concessions by the Jews of the deficiency, the section 6621(c) interest, and the additions to tax under sections 6653(a) (1) and (2) and 6659. On or about December 20, 1993, Caiazza returned a modified, signed proposed decision document to respondent's counsel which reflected a deficiency in the amount of $ 4,171, concession by the Jews of the section 6621(c) interest, and concession by respondent of the additions to tax under section 6653(a) (1) and (2), but omitted reference to section 6659. William D. and Linda R. Weirich (hereinafter the Weirichs)
The first correspondence involving the Weirichs is a letter dated June 25, 1987, from the Examination Division which sets forth *256 a settlement policy for 1981 identical to that set forth in West's December 29, 1988, letter, as modified by the June 5, 1989, letter to the Jews. On July 14, 1987, Caiazza sent additional information to a revenue agent, but there is no indication of acceptance of any settlement offer. Then, on April 4, 1989, Appeals Officer Martha Anderson sent the Weirichs a settlement offer consistent with the settlement policy stated by the Examination Division. Caiazza, by letter dated June 15, 1989, rejected the settlement offer. On July 3, 1989, respondent issued the Weirichs a notice of deficiency for 1981. On March 8, 1990, in a letter to the examining revenue agent in connection with taxable year 1983, Caiazza rejected a proposed "assessment". On August 3, 1990, Keebler requested additional information with respect to the Weirichs' (and the Rohns') 1981 and 1982 taxable years. In response to Keebler's request, Caiazza sent Keebler the requested information on March 12, 1991. Additional information was sent by Caiazza on November 20, 1991, and January 10, 1992. In the interim, on July 24, 1991, Appeals Officer M. Kelley sent the Weirichs a letter with respect to an alleged settlement *257 offer made by respondent on December 12, 1990. Moreover, the Kelley letter indicated that Caiazza had not submitted a proper power of attorney on behalf of the Weirichs. This record does not reflect any December 1990 settlement offer; in any event, neither the Weirichs nor Caiazza responded to the Kelley letter. On September 11, 1991, respondent issued the Weirichs a notice of deficiency for the taxable year 1983. On March 16, 1992, Keebler sent Caiazza proposed settlement documents, as well as closing agreements for 1983, requiring the signature of each of the Weirichs. Those documents proposed a deficiency for 1983 in the amount of $ 3,560, with respondent conceding the additions to tax under section 6653(a) (1) and (2), and the Weirichs conceding the section 6621(c) interest. [5] Apparently, there was no response from either Caiazza or the Weirichs. On December 15, 1993, respondent's counsel sent Caiazza proposed settlement documents for the Weirichs *258 reflecting full concession by the Weirichs of the amounts set forth in the notices of deficiency. Caiazza returned modified settlement documents signed by him, reflecting a deficiency for 1981 in the amount of $ 7,445, concession by respondent of additions to tax under sections 6653(a) (1) and (2) and 6659, and concession by the Weirichs of the additional interest under section 6621(c). For 1983, the revised decision document showed a deficiency of $ 3,560, with respondent conceding the additions to tax for negligence and the Weirichs conceding section 6621(c) interest. There is no information in the record to explain the deviations from the deficiency amounts set forth in the notices of deficiency. Ross W. and Marie R. Rohn (hereinafter the Rohns)
This record is very sparse with regard to correspondence concerning the Rohns. The notice of deficiency was mailed on March 22, 1989. The earliest correspondence exhibited in the record for the Rohns is a letter dated August 3, 1990, in which respondent requested additional information. On February 4, 1993, the Appeals Office sent settlement documents to Caiazza that obviously were not returned. On December 15, 1993, respondent's *259 counsel sent settlement offers to the Rohns which were retyped, signed, and returned by Caiazza. The changes made by Caiazza for the Rohns were similar to those he made for the Jews. Discussion
The law regarding administrative settlement offers is well established. Regulations issued by the Internal Revenue Service conclusively establish the procedures for closing agreements and compromises pursuant to sections 7121 and 7122. Secs. 301.7121-1, 301.7122-1, Proced. & Admin. Regs. These procedures are exclusive and must be satisfied in order to effectuate a compromise or settlement which will be binding on both the taxpayer and the Government. Shumaker v. Commissioner, 648 F.2d 1198, 1200 (9th Cir. 1981) (citing Botany Worsted Mills v. United States, 278 U.S. 282, 288-289 (1929)), affg. in part and revg. in part T.C. Memo. 1979-71; see also Sanders v. Commissioner, 225 F.2d 629 (10th Cir. 1955), affg. 21 T.C. 1012 (1954). An offer of compromise or settlement must be submitted on special forms prescribed by the Secretary, and *260 an offer will not be considered to be accepted until, and unless, the taxpayer is notified, in writing, of the acceptance. Laurins v. Commissioner, 889 F.2d 910, 912 (9th Cir. 1989), affg. sub nom. Norman v. Commissioner, T.C. Memo. 1987-265; sec. 301.7122-1(d) (1), (3), Proced. & Admin. Regs. Although general principles of contract law may be applied to determine whether a form submitted pursuant to sections 7121 or 7122 reflects the parties' mutual assent to settle a case, no such forms were submitted in this case. Robbins Tire & Rubber Co. v. Commissioner, 52 T.C. 420, 435-436 (1969). The short answer to petitioners' contentions with regard to offers of settlement and alleged acceptances prior to docketing of the cases in this Court is that no administrative negotiations are binding against either party and enforceable without compliance with sections 7121 or 7122, which did not occur in these cases. However, once a case becomes docketed in this Court a different set of principles may be involved. This Court will, of course, enter an order adjudicating liability in accordance with *261 an agreement of the parties, for the existence of such agreement shows that there is no longer any controversy between them. Indeed, once a stipulation is filed by both sides, it is binding upon them. Cf. Saigh v. Commissioner, 26 T.C. 171 (1956). But where, for whatever reason, the parties are not in agreement at the time the case is called for trial, it is wholly irrelevant in this connection that they may have been in agreement at some earlier time. In Himmelwright v. Commissioner, T.C. Memo. 1988-114, we stated: This Court has refused to enforce a settlement reached at the appeals level unless the taxpayer showed that the settlement documents were signed by the respondent's authorized representative and filed with the Court. Cole v. Commissioner, 30 T.C. 665 (1958), affd. per curiam 272 F.2d 13 (2d Cir. 1959) * * * However, we have declined to set aside a settlement duly executed by the parties and filed with the Court in the absence of fraud or mutual mistake. Stamm International Corp. v. Commissioner, 90 T.C. [315] (Feb. 22, 1988); Spector v. Commissioner, 42 T.C. 110 (1964) *262 * * *
See also Applestein v. Commissioner, T.C. Memo. 1989-42, wherein the Court held both the Commissioner and the taxpayers to the terms of their settlement agreement which was filed with the Court. The case of Estate of Jones v. Commissioner, 795 F.2d 566, (6th Cir. 1986), affg. T.C. Memo. 1984-53, although distinguishable, is instructive. In that case, the Appeals Officer negotiated a settlement with the taxpayer after docketing of the case. He prepared and sent proposed Tax Court decision documents to the taxpayer, who signed and returned them to the Appeals Officer. The taxpayer was then advised by the Appeals Officer that the decision documents were forwarded to the Chief Counsel's office for signature and filing with the Court. However, before filing occurred, an erroneous statement of fact in the protest was noted and the settlement was canceled. The taxpayer's motion for entry of decision and enforcement of the settlement was denied by this Court, which decision was affirmed by the Court of Appeals for the Sixth Circuit, citing Cole v. Commissioner, 30 T.C. 665 (1958), *263 affd. per curiam 272 F.2d 13 (2d Cir. 1959), with approval. The facts in Estate of Jones are substantially more compelling for enforcement of the settlement than in the instant cases, and yet enforcement was not available. With these principles in mind, we turn to the instant cases. The issue with respect to the Jews initially is whether Caiazza's acceptance of West's December 29, 1988, settlement offer is binding on respondent. Although West initially offered in writing to settle the case, the offer contained what respondent viewed as an error; i.e., respondent's concession of section 6621(c) liability. Caiazza sent a letter wherein he conditionally accepted the offer. Additional information was exchanged and the Appeals Division (via West), realizing its error, wrote to advise that the offer was withdrawn unless the Jews would concede the section 6621(c) interest. Caiazza responded that it was too late for respondent to withdraw the offer, and that the conditional acceptance was only with regard to the actual computation of the tax liability. Respondent proceeded to issue the Jews a notice of deficiency for the 1983 tax year, [6] the Jews *264 filed a petition with this Court, and subsequent settlement negotiations at both the Appeals Division and the District Counsel levels resulted in no settlement documents being signed by both parties and filed with the Court. Under these circumstances, it is clear that West's offer and the alleged acceptance of Caiazza do not comport with the requirements for administrative settlements under sections 7121 and 7122, as set forth above. Until the formal submission of appropriate closing agreement documents duly signed by the taxpayers and approved by the Regional Commissioner or his delegate, the Appeals Division was free to change the terms of the settlement at any time. The fact that West's letter indicated approval of the Chief Counsel is irrelevant. Therefore, we need not consider whether West's settlement offer was *265 mutually agreed to as to all of its terms by the "conditional acceptance" language. We further find, as to any alleged alternative offer subsequent to the docketing of the Jews' case, that there never was an unqualified acceptance by either the Jews or their counsel. Indeed, the modification of the settlement documents by Caiazza was merely a counter-offer that was clearly rejected by respondent. Accordingly, as to the Jews, we will deny petitioners' motion, grant respondent's motion, and enter a decision for respondent. As to the Weirichs, it is clear that the June 25, 1987, offer of settlement made by respondent's Examination Division and the April 4, 1989, offer of settlement made by the Appeals Division (regarding only the 1981 tax year) were both rejected. Moreover, Keebler's subsequent settlement offer of March 16, 1992 (regarding only the 1983 tax year) was not accepted, and, there is no evidence of any other settlement offer regarding 1981. Accordingly, petitioners' motion as to the Weirichs will be denied, respondent's motion will be granted, and decision will be entered for respondent. Concerning the Rohns, there is absolutely no evidence of any settlement offer being *266 made, much less any acceptance whatsoever. Accordingly, as to the Rohns, petitioners' motion will be denied, and we will grant respondent's motion and enter a decision for respondent. Appropriate orders and decisions for respondent will be entered. Footnotes
1. Cases of the following petitioners are consolidated herewith: William D. Weirich & Linda R. Weirich, docket Nos. 23790-89, and 27905-91; and, Dean Jew & Nellie Q. Jew, docket No. 17958-91.↩
2. All section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. Plus 50 percent of the interest due on the deficiency under sec. 6653(a) (2).↩
2. Respondent determined that petitioners are liable for an increased rate of interest attributable to tax motivated transactions.↩
3. There is no indication from this exhibit that there was a power of attorney from the Jews to Mr. Caiazza on file with the Appeals Division. West's letter indicated that a copy of such letter would have been sent to a representative of the taxpayer, if there was a power of attorney, if there were one, but no "cc" notation appears on the letter. However, this fact is not critical to our decision.↩
4. It would appear the Green Jade Enterprises is another name for Green Jade Properties or merely a typographical error.↩
5. It is unclear why 1981 was not considered or involved.↩
6. It should be noted that West's offer and Caiazza's conditional acceptance involved West's jurisdiction of the 1981 and 1982 tax years, but the offer did include ramifications to subsequent years.↩