ROSCOE C. WEBB, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Webb v. Commissioner
Docket No. 11415-85
United States Tax Court
T.C. Memo 1994-549; 1994 Tax Ct. Memo LEXIS 557; 68 T.C.M. (CCH) 1106; 68 Trade Cas. (CCH) P1106; October 31, 1994, Filed *557 Petitioner's Motion to Vacate Decision will be denied. For petitioner: Mark Bernsley. For respondent: Alan Kline and Paulette Segal. DAWSON
DAWSON
SUPPLEMENTAL MEMORANDUM OPINION DAWSON, Judge: This case is presently before us on petitioner's motion to vacate the decision entered in this case. I. General Background
In Webb v. Commissioner, T.C. Memo. 1990-556, we sustained respondent's disallowance of petitioner's claimed deductions for distributive losses resulting from his investment in Far West Drilling Associates (FWDA), which was one of the six limited partnerships that composed the Petro-Tech National Litigation Project. [1] We also sustained respondent's additions to tax. On April 10, 1991, we entered a decision in this case. Because no appeal was taken within 90 days, the decision became final on July 9, 1991. Secs. 7481, 7483. *558 [2]
On December 27, 1991, petitioner filed an untimely motion for leave to file a motion to vacate the decision. [3] On February 3, 1992, respondent filed an objection to this motion. On February 27, 1992, petitioner filed a reply to respondent's objection. On March 17, 1992, we denied petitioner's motion for leave to file the motion to vacate on the ground that there was no factual or legal basis for vacating and setting aside the April 10, 1991, final decision of this Court. On May 11, 1992, petitioner appealed our denial of his motion for leave to file the motion to vacate the decision. On February 14, *559 1994, the United States Court of Appeals for the Ninth Circuit filed a Memorandum and entered a Judgment, remanding this case with instructions to grant leave for petitioner to file his motion to vacate our April 10, 1991, decision. The Memorandum of the Court of Appeals stated that petitioner's motion seeks to vacate this Court's decision for lack of jurisdiction, citing Billingsley v. Commissioner, 868 F.2d 1081, 1085 (9th Cir. 1989). On March 17, 1994, in compliance with the mandate of the Court of Appeals, this Court by Order granted petitioner's motion for leave to file motion to vacate decision out of time, and directed the Clerk of the Court to file the motion to vacate decision. On March 29, 1994, petitioner filed a Brief on Remand in support of his motion to vacate the decision. On July 1, 1994, respondent filed a Response to Petitioner's Brief on Remand. After a July 27, 1994, telephone conference with counsel for the parties, this Court reviewed its legal file and discovered what appeared to be an untimely petition filed in this case. [4] Thus, on August 1, 1994, we issued an Order to Show Cause why this case should not be dismissed for *560 lack of jurisdiction and to show cause why the decision entered on April 10, 1991, should not be vacated. On August 8, 1994, the Clerk of the Court was ordered to provide the parties with a copy of the face of the envelope which contained the petition. The Court instructed the parties to produce evidence that the petition was timely filed. On August 30, 1994, Mr. Bernsley (counsel for petitioner) filed a declaration along with a photocopy of a photocopy of the receipt for certified mail, which matches the certified mail number on the envelope that contained the petition. The date stamped on the certified receipt is 1, and the year is 1985. The month is illegible. Nevertheless, on September 6, 1994, the parties filed a Supplemental Stipulation of Facts, wherein they agreed that petitioner timely mailed the petition in this case on May 1, 1985. *561 Petitioner's motion to vacate the decision raises two issues: (1) Whether respondent's agents possessed delegated authority to enter into the closing agreement with respect to a tax year (1981) that was at issue in an already-docketed Tax Court case; and (2) if the closing agreement is valid, whether section 7121(b) permits the parties in a docketed Tax Court case to limit the Court's jurisdiction by way of a closing agreement that was not specially pleaded as an avoidance or affirmative matter pursuant to Rule 39 prior to the Court's trial, opinion, and decision. II. The Notice, Petition, and Closing Agreement
On February 1, 1985, respondent timely mailed a notice of deficiency to petitioner and Lydia M. Webb (Mrs. Webb). [5] The notice disallowed the $ 104,033 in losses reflected on petitioner and Mrs. Webb's joint 1981 Federal income tax return, which related to their investment in FWDA. The petition in this case was filed on May 6, 1985. It was executed by Carl M. Kuntz (Mr. Kuntz), as attorney for petitioner. The answer was filed on June 17, 1985. *562 On April 1, 1987, the parties executed and filed a stipulation of settled issues, which resolved all the issues in petitioner's case except for those relating to his investment in FWDA. On April 23, 1987, Barry C. Feldman (Mr. Feldman) of Mintz, Fraade & Zeiger, P.C., filed an entry of appearance for petitioner in this case. On August 13, 1987, Frederick M. Mintz and Jay L. Zeiger, both of Mintz, Fraade & Zeiger, also filed entries of appearance for petitioner. On January 7, 1988, the Court granted Mr. Kuntz's motion to withdraw as counsel. On December 30, 1987, Sharon Katz-Pearlman (who was at the time the Government's project attorney for the Petro-Tech National Litigation Project), mailed a letter to Mr. Feldman, petitioner's attorney, with respect to the Petro-Tech cases, which clearly outlined the terms of the settlement offer for each of the Petro-Tech cases. The letter stated as follows: In the event that the administrative files do not indicate that the offer was made prior to the filing of the Tax Court petition, your firm will have thirty (30) days from the date of filing with the Tax Court (as indicated by the filing date stamped on the petition by the Tax Court) *563 in which to provide this office with an acceptance of the offer and the necessary substantiation. If this information is not received within the thirty (30) day period, the offer shall be deemed rejected by the petitioner and will not be renewed. Please note that there will be no exceptions to this procedure and that it will be firmly adhered to by this office.
Neither Mr. Feldman nor petitioner replied to this letter. On February 3, 1988, while this case was pending in this Court, Revenue Agent Rochelle Ramirez mailed a letter to petitioner and Mrs. Webb from the Los Angeles District Office (hereinafter the February 3 letter). In the letter petitioners were informed that their 1982 Federal income tax return had been selected for examination as a result of their status as investors in FWDA. The letter further invited them to settle certain aspects of petitioner's FWDA investment. The offer stated: [the taxpayer] will be allowed a deduction in the initial year of the partnership in the amount of 75% of [the taxpayer's] total out-of-pocket; [the taxpayer] will concede all deductions arising from the partnership for all years. The government will concede the penalties *564 pursuant to I.R.C. section 6653(a), 6659 and 6661; [the taxpayer] must concede the increased interest rate pursuant to I.R.C. section 6621(c).
Petitioner was further informed that, if he accepted the offer, the IRS "will furnish [him] with either a Form 870-AD and/or Closing Agreement." [6]
Enclosed with the February 3 letter was a form that provided petitioner with the opportunity to either accept or reject respondent's settlement offer. On April 13, 1988, petitioner signed the form but failed to indicate whether he accepted or rejected the settlement. He did, however, attach copies of three checks indicating that he had contributed $ 30,000, $ 30,440.56, and $ 32,800 to FWDA on December 10, 1981, March 1, 1982, and February 28, 1983, respectively. On May 26, 1988, petitioner executed a Form 906, "Closing Agreement on Final Determination *565 Covering Specific Matters" (the closing agreement) with respect to tax year 1981. On June 3, 1988, Leslie McKinney, a revenue agent, and an IRS section chief (whose signature on the closing agreement is illegible), in the Los Angeles district office signed the Form 906 on behalf of the Commissioner. The substantive terms of the closing agreement were similar to the offer proposed in the February 3 letter. [7]
*566 On June 8, 1988, the Court set August 8, 1988, as the trial date for petitioner's case. On July 7, 1988, the Court granted respondent's motion for leave to file an amendment to her answer. Thus, the amendment to answer was filed, in which respondent raised the additions to tax pursuant to sections 6653(a)(1) and (2) and 6659, and additional interest pursuant to section 6621(c). During the trial, the closing agreement was not brought to the Court's attention by petitioner, his counsel, or respondent's counsel. [8]The Memorandum Findings of Fact and Opinion, T.C. Memo. 1990-556, was filed on October 25, 1990. Our decision was entered on April 10, 1991.
The first time the Court became aware of the closing agreement's existence was on December 27, 1991 (more than 8 months after the decision was entered), when newly retained counsel for petitioner, Mr. Bernsley, filed a motion for leave to file a motion to vacate the *567 decision. [9] In the motion petitioner argued that the Court had exceeded its jurisdiction by "disregarding" the closing agreement, and that such unauthorized action provided grounds for vacating the decision. Petitioner further asserted that the Court was obligated to vacate its decision because respondent's "failure" to inform the Court of the closing agreement constituted a fraud on the Court. *568 On February 3, 1992, respondent objected to this motion. Respondent argued that petitioner had shown neither that there had been fraud on the Court nor that the Court lacked jurisdiction to enter its decision. In any event, respondent contended that the closing agreement was invalid because it had not been executed by an individual with sufficient authority to bind the IRS. Respondent relied on paragraph 4 of Delegation Order No. 97 and Delegation Order LA-189 (see infra at 12). The former grants authority to certain examination and revenue personnel to enter into closing agreements, but specifically limits that authority by excluding cases docketed before the Tax Court. The latter is a redelegation by the Los Angeles District Director to certain lower level officials of the authority to execute closing agreements but with the exception that such authority does not extend to taxable periods at issue in cases pending before the Tax Court. On February 27, 1992, petitioner replied to respondent's objection. Among other things, petitioner contended that the closing agreement was valid pursuant to Delegation Order No. 225. As stated above, on March 17, 1992, we denied petitioner's *569 motion for leave to file the motion to vacate the decision. On May 11, 1992, petitioner appealed our decision, and on February 14, 1994, the United States Court of Appeals for the Ninth Circuit remanded the case for consideration and disposition of the motion to vacate. Although the parties were given an opportunity to have a hearing on this motion, they declined the Court's invitation, stating that they preferred to have the issues decided on the submitted affidavits and briefs. We note that on October 29, 1992, respondent issued a Tax Equity and Fiscal Responsibility Act penalty-only notice of deficiency to petitioner and Lydia M. Webb relating to petitioner's 1984 investment in FWDA. Respondent conceded the additions to tax for negligence. The agreement of the parties is reflected in the Decision Document for docket No. 24771-92. III. Discussion
A. Delegated Authority to Enter Into Closing Agreement in Docketed Tax Court Case
We must first decide whether respondent's agents possessed delegated authority to enter into a closing agreement with respect to a tax year (1981) that was at issue in an already-docketed Tax Court case. Respondent contends that the *570 closing agreement was not binding because both the revenue agent and the section chief who signed the closing agreement lacked actual authority to do so. Petitioner on the other hand contends that the section chief both held himself out as having the authority to sign the closing agreement and, in fact, had authority to bind the IRS. The delegation of authority to execute closing agreements is statutory. Section 7121(a) authorizes the Secretary of the Treasury or his delegate to enter into closing agreements with respect to the tax liability of any person for any taxable period. This Court has repeatedly declined to enforce a settlement agreement where the person entering into the agreement on behalf of the Commissioner lacked the authority to bind the Commissioner. Estate of Jones v. Commissioner, 795 F.2d 566 (6th Cir. 1986), affg. T.C. Memo. 1984-53; Dorl v. Commissioner, 507 F.2d 406, 407 (2d Cir. 1974), affg. per curiam T.C. Memo. 1973-145; Gardner v. Commissioner, 75 T.C. 475 (1980); Cole v. Commissioner, 30 T.C. 665, 674 (1958), *571 affd. per curiam 272 F.2d 13 (2d Cir. 1959); Baratelli v. Commissioner, T.C. Memo. 1994-484; David v. Commissioner, T.C. Memo 1993-621; Ginella v. Commissioner, T.C. Memo. 1991-625. In other words, a closing agreement is not binding if the agents who executed the agreement on the Commissioner's behalf did not have the delegated authority to do so. Botany Worsted Mills v. United States, 278 U.S. 282, 288-289 (1929); Klein v. Commissioner, 899 F.2d 1149, 1153 (11th Cir. 1990); Estate of Jones v. Commissioner, supra at 571 n.3; Reimer v. United States, 441 F.2d 1129, 1130 (5th Cir. 1971). 1. Delegation Order No. 97
Delegation Order No. 97 (Rev. 27), effective October 31, 1987, Handbook of Delegation Orders, Internal Revenue Manual (CCH), sec. 1229-31 (amended and supplemented by Delegation Order No. 225, infra pp. 15-16), is entitled "Closing Agreements Concerning Internal Revenue Tax Liability". Delegation Order No. 97 authorizes *572 certain examination and revenue personnel to enter into closing agreements. However, it specifically limits that authority by excluding cases docketed before the Tax Court. [10] The pertinent language of Delegation Order No. 97 is as follows: 4. The Assistant Commissioner (International); Regional Commissioners; Regional Counsel; Assistant Regional Commissioners (Examination); Service Center Directors; District Directors; Chiefs and Associate Chiefs of Appeals Offices; and Appeals Team Chiefs with respect to his/her team cases, are hereby authorized in cases under their jurisdiction (but excluding cases docketed before the United States Tax Court) to enter into and approve a written agreement with any person relating to the Internal Revenue tax liability of such person (or of the person or estate for whom he/she acts) for a taxable period or periods ended prior to the date of agreement and related specific items affecting other taxable periods. [Emphasis added.]
*573 Petitioner argues that the phrase "excluding cases docketed before the United States Tax Court" modifies the phrase "cases under their jurisdiction." He contends that the exclusion language limits who can settle docketed cases, not who can settle limited issues which may be present in several years. Here, petitioner continues, the "case" under the Examination Division's jurisdiction was petitioner's 1982 liability, a year not before the Court. In connection with the resolution of that liability, petitioner and the IRS entered into the closing agreement regarding 1981 (the docketed year). Because 1982 was not a docketed year, petitioner argues, the closing agreement was valid. In sum, petitioner contends that because Delegation Order No. 97, supra does not limit the other taxable periods which may be affected by the resolution of a specific issue, the validity of the closing agreement is not undermined. Respondent disagrees. The closing agreement, respondent argues, is not binding in any way with respect to issues that were docketed before the Tax Court. It is stressed that the phrase "excluding cases docketed before the United States Tax Court" stands on its own and *574 applies to all issues involved in a docketed Tax Court case. Accordingly, respondent contends that the revenue agent and section chief lacked authority under Delegation Order No. 97, supra to enter into the closing agreement with respect to any matter before the Court concerning petitioner's 1981 tax year. We agree with respondent. Based upon the plain and unambiguous language of Delegation Order No. 97, supra it is clear that the Examination Division's agents lacked authority to enter into a closing agreement with respect to any matter pending before the Tax Court. The closing agreement at issue attempted to do just that when it addressed petitioner's 1981 tax year. [11] Thus, pursuant to Delegation Order No. 97, supra the closing agreement is invalid to the extent that it attempted to affect a tax year (1981) that was already before the Tax Court in a docketed case. Respondent's agents simply lacked authority under Delegation Order No. 97, supra to enter into an agreement for petitioner's 1981 tax year once it was docketed in this Court. *575 2. Delegation Order No. LA-189
Delegation Order No. LA-189 (Rev. 4), effective March 3, 1986, is a redelegation of Delegation Order No. 97, supra from the Los Angeles District Director to designated officials. Similar to Delegation Order 97, this delegation order also specifically excludes respondent's agents from entering into closing agreements with respect to cases docketed before the Tax Court. [12] For the reasons stated above, we conclude that the revenue agent and section chief who signed the closing agreement on behalf of the IRS did not have the authority to bind the Commissioner under Delegation Order No. LA-189 because the case was docketed before the Tax Court at the time the closing agreement was executed. *576 3. Delegation Order No. 225
Delegation Order No. 97, supra was amended and supplemented by Delegation Order No. 225 (Rev. 1), 52 Fed. Reg. 13008 (April 29, 1987), effective October 31, 1987. Delegation Order No. 225 delegates to certain examination officials, among others, the authority to execute closing agreements in cases involving certain tax shelters "where the initial investment was made prior to January 1, 1983." [13]
*577 The language of Delegation Order No. 225 is silent as to docketed Tax Court cases. However, Delegation Order No. 225 amended and supplemented Delegation Order No. 97, supra. Thus, both Delegation Orders must be read in unison. By doing so, it is clear that respondent's agents are specifically excluded from entering into closing agreements with respect to tax shelter cases (where the initial investment was made prior to January 1, 1983) which are docketed before the Tax Court. Because this case was already docketed in the Tax Court at the time the closing agreement was executed, the revenue agent and section chief who executed the closing agreement did not have the authority to bind the Commissioner with regard to petitioner's 1981 tax year. In sum, it is clear that respondent's agents did not possess authority under Delegation Order 97, LA-189, or 225, to bind the Commissioner with regard to petitioner's 1981 tax year. 4. Apparent Authority
Petitioner argues that the revenue agent and section chief had apparent authority to enter into the closing agreement. Petitioner may have assumed that the revenue agent and section chief had authority to bind the Commissioner. *578 See Baker v. Commissioner, 24 T.C. 1021, 1024 (1955). However, it is the responsibility of those dealing with a Government agent to determine the extent of that agent's authority. Boulez v. Commissioner, 76 T.C. 209, 214 (1981), affd. 810 F.2d 209 (D.C. Cir. 1987). "Persons dealing with an agent of the government must take notice of the limitations of his authority." Bornstein v. United States, 170 Ct. Cl. 576, 345 F.2d 558, 562 (1965); see Graff v. Commissioner, 74 T.C. 743, 762 (1980), affd. per curiam 673 F.2d 784 (5th Cir. 1982); Midwest Motor Express, Inc. v. Commissioner, 27 T.C. 167, 182 (1956), affd. 251 F.2d 405 (8th Cir. 1958); Smale & Robinson, Inc. v. United States, 123 F. Supp. 457, 465 (S.D. Cal. 1954). An agent "cloaked only with apparent authority" cannot bind the United States. Bornstein v. United States, 345 F.2d at 562. The United States *579 is not bound by an apparent settlement where an agent was without authority to compromise a taxpayer's tax liability. Reimer v. United States, 441 F.2d at 1130; see also Klein v. Commissioner, 899 F.2d at 1153. [14] Thus, even if petitioner assumed that the revenue agent and section chief had apparent authority to enter into the closing agreement, such apparent authority does not translate into actual authority and cannot bind the IRS. *580 Accordingly, we hold that respondent's agents lacked the delegated authority to enter into the closing agreement with respect to petitioner's 1981 tax year. The closing agreement was therefore null and void. B. Section 7121(b) and Rule 39
Even if the closing agreement were valid, it is our view that section 7121(b) [15] does not permit the parties in a docketed Tax Court case to limit this Court's jurisdiction by way of a closing agreement that is not specially pleaded pursuant to Rule 39 as an avoidance or affirmative matter prior to trial, opinion, and decision. Petitioner contends that the Court is obligated to vacate its otherwise final decision if the decision is inconsistent with the closing agreement entered into pursuant to section 7121(b). To the contrary, respondent contends that the Court's jurisdiction is not limited by a closing agreement that is not affirmatively pleaded and accepted by the Court. *581 The Tax Court possesses only such jurisdiction as is conferred upon it by the Internal Revenue Code. See Commissioner v. Gooch Milling & Elevator Co., 320 U.S. 418, 422 (1943); Jefferson Loan Co. v. Commissioner, 249 F.2d 364, 366 (8th Cir. 1957), affg. an Order of this Court dated May 25, 1956; Estate of Kahn v. Commissioner, 60 T.C. 964, 968 (1973); Burns, Stix Friedman & Co. v. Commissioner, 57 T.C. 392, 396 (1971). Pursuant to sections 7481 and 7483, a Tax Court decision becomes final "Upon the expiration of the time allowed for filing a notice of appeal, if no such notice has been duly filed within such time". Sec. 7481(a)(1). The notice of appeal must be filed within 90 days. Sec. 7483. Where no appeal is taken, the Tax Court's decision becomes final 90 days after the entry of the decision. A motion to vacate must be filed "within 30 days after the decision has been entered, unless the Court shall otherwise permit." Rule 162. The decision in this case was entered on April 10, 1991, and the decision became final on July 9, 1991. Petitioner's motion *582 for leave to file motion to vacate decision out of time was filed with the Court on December 27, 1991, more than 5 months after the decision became final. There is no question that petitioner's motion was untimely. Once a decision becomes final, the Tax Court lacks jurisdiction to reconsider either the decision or its underlying merits. Lasky v. Commissioner, 352 U.S. 1027 (1957); [16] *583 Abatti v. Commissioner, 859 F.2d 115, 117 (9th Cir. 1988), affg. 86 T.C. 1319 (1986); Toscano v. Commissioner, 441 F.2d 930 (9th Cir. 1971). One exception to this general rule is that the Tax Court has jurisdiction to reconsider a final decision if fraud was perpetrated on the Court. Billingsley v. Commissioner, 868 F.2d at 1085; Abatti v. Commissioner, supra at 119. [17] A second exception is that the Tax Court has jurisdiction to reconsider a final decision where the Court may have lacked jurisdiction to enter the decision. Billingsley v. Commissioner, supra.[18]
*584 The provisions that govern the finality of Tax Court decisions have been strictly construed. Toscano v. Commissioner, supra at 932. "Exceptions which would allow final decisions to be reconsidered must be construed narrowly in order to preserve the finality of judgments." Abatti v. Commissioner, 859 F.2d at 119. To permit the reopening of Tax Court final decisions would "inundate the courts with litigation respecting stale claims." White's Will v. Commissioner, 142 F.2d 746, 750 (3d Cir. 1944) affg. 40 B.T.A. 664 (1939). Petitioner challenges the finality of our April 10, 1991, decision by arguing that we must vacate the decision because our jurisdiction was limited by the terms and conditions of his closing agreement with respondent. He bears the burden of proof on this issue. See Abeles v. Commissioner, 90 T.C. 103, 106 (1988). It is a long-settled principle that where, as here, a notice of deficiency is timely mailed to the taxpayer, and the taxpayer files a timely petition in the Tax Court seeking a redetermination of *585 the determined deficiency, the taxpayer has voluntarily invoked the exclusive jurisdiction of this Court for such redetermination. See secs. 6213(a), 6512(a), 7442; see also Gustafson v. Commissioner, 97 T.C. 85 (1991); Dorl v. Commissioner, 57 T.C. 720, 721-722 (1972), affd. per curiam 507 F.2d 406 (2d Cir. 1974); Southern Cal. Rock & Gravel Co. v. Commissioner, 26 B.T.A. 296, 299 (1932). A taxpayer may not unilaterally oust the Tax Court of jurisdiction. Jurisdiction continues unimpaired until the function of the Court is either superseded by authorized action of another Court or is terminated by entry of decision or dismissal. See, e.g., Main-Hammond Land Trust v. Commissioner, 17 T.C. 942, 956 (1951), affd. 200 F.2d 308 (6th Cir. 1952); Browning v. Commissioner, T.C. Memo. 1974-80. The execution of a closing agreement after we have obtained subject matter jurisdiction over a taxable year, even if the closing agreement is valid, does not divest the Court of its jurisdiction *586 over a taxable year that has been properly placed before the Court through a valid notice of deficiency and a timely petition. In such a case the closing agreement is simply an agreement between two parties entered into without the Court's approval. In Browning v. Commissioner, supra, we held that an agreement between the IRS and the taxpayer as to the amount of deficiencies and additions to tax owed did not deprive this Court of jurisdiction. We stated: After jurisdiction has vested in this Court an agreement by the parties on the amount of the deficiencies does not deprive this Court of power to determine the amount of the deficiency, if any, unless and until the settlement agreement is filed with the Court and decision is entered in accordance therewith; nor does execution by petitioners of a waiver of restrictions on immediate assessment and collection of the deficiencies agreed upon vitiate this Court's jurisdiction. United States v. Shepard's Estate, 196 F. Supp. 281, 284, affirmed as modified on other issues 319 F.2d 699. [Emphasis added.]
See also Estate of Jones v. Commissioner, 795 F.2d 566, 573 (6th Cir. 1986), *587 affg. T.C. Memo. 1984-53. Similarly, we think that the execution of a closing agreement after a case is docketed in the Tax Court does not deprive us of subject matter jurisdiction or limit our jurisdiction. Petitioner had a duty to the Court (and to his attorney) to disclose the existence of the closing agreement. [19] Petitioner is a highly educated person (a surgeon) with knowledge of business and financial affairs. We do not accept his explanation that he was unable to comprehend the meaning and consequences of the closing agreement at the time he executed it. Petitioner has failed to carry his burden of proving facts necessary to establish that we must vacate our April 10, 1991, decision because our jurisdiction was limited by the terms and conditions of the closing agreement. *588 In order for a valid closing agreement to have been properly before the Court, and hence enforceable by the Court, petitioner should have affirmatively pleaded such matter. The closing agreement, by itself, did not deprive the Tax Court of jurisdiction. See Browning v. Commissioner, supra.This Court will decline to decide issues that are not raised by the notice of deficiency unless they are raised in the pleadings or by an amendment to the pleadings. Fox Chevrolet, Inc. v. Commissioner, 76 T.C. 708 (1981). "Time and again this Court has reiterated that we will not consider issues not raised in the pleadings." Rollert Residuary Trust v. Commissioner, 80 T.C. 619, 636 (1983), affd. 752 F.2d 1128 (6th Cir. 1985). See also, e.g., Winnett v. Commissioner, 96 T.C. 802, 806 (1991); Markwardt v. Commissioner, 64 T.C. 989, 997 (1975); Estate of Mandels v. Commissioner, 64 T.C. 61, 73 (1975); Frentz v. Commissioner, 44 T.C. 485, 491 (1965), *589 affd. without discussion of this issue 375 F.2d 662 (6th Cir. 1967); Isenbergh v. Commissioner, 31 T.C. 1046, 1057 (1959); Holahan v. Commissioner, 21 T.C. 451, 465 (1954), affd. 222 F.2d 82 (2d Cir. 1955); Kutsunai v. Commissioner, T.C. Memo. 1983-182. In order for us to have considered the closing agreement, even if valid, petitioner should have affirmatively pleaded its terms and conditions as a special matter. See Estate of Shedd v. Commissioner, 320 F.2d 638, 641 (9th Cir. 1963), affg. 37 T.C. 394 (1961). Rule 39 provides: A party shall set forth in the party's pleading any matter constituting an avoidance or affirmative defense * * *. A mere denial in a responsive pleading will not be sufficient to raise any such issue.
Prior to trial, petitioner had ample opportunity to affirmatively plead the existence of the closing agreement. He failed to do so. We note that petitioner's argument that we "exceeded" our jurisdictional mandate is tantamount to asserting that *590 our decision was erroneous or contrary to the decision we may have been obligated to enter. However, "Even erroneous decisions become final under [section] 7481 if no appeal is filed within the allotted time." Abatti v. Commissioner, 859 F.2d 115, 119 (9th Cir. 1988), affg. 86 T.C. 1319 (1986); cf. Billingsley v. Commissioner, 868 F.2d 1081, 1084 (9th Cir. 1989) ("a decision which never becomes final, as opposed to a decision which is final but was entered erroneously, can be the subject of a motion to vacate even after the expiration of the time for appeal set forth in [section] 7483") (emphasis added). [20]
*591 Here respondent sent petitioner a timely notice of deficiency, petitioner filed a timely petition, and the Tax Court acquired jurisdiction over the case. Thus, even if the decision entered on April 10, 1991, was "unauthorized" in view of the closing agreement's existence, the decision did not become a nullity. It became final 90 days later. Petitioner's remedy was to file his motion to vacate, or a notice of appeal, before the decision became final, especially where he knew of the closing agreement's existence. See Crews v. Commissioner, 120 F.2d 749, 751 (10th Cir. 1941). The statutes regarding the finality of decisions would be rendered useless if final decisions could be reviewed every time a party alleges a Court error. We conclude that, even if the closing agreement were valid, section 7121(b) does not permit petitioner in his docketed 1981 Tax Court case to limit the Court's jurisdiction by the execution and terms of a closing agreement which has not been specially pleaded pursuant to Rule 39. To reflect the foregoing, Petitioner's Motion to Vacate Decision will be denied. Footnotes
1. Twelve docketed cases from the project, two from each partnership, were consolidated under the caption Roscoe C. Webb, Jr., et al. v. Commissioner, docket No. 11415-85. The Webb↩ case was subsequently severed from the consolidation after the opinion was filed.
2. All section references are to the Internal Revenue Code. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. On the same date that petitioner's motion to vacate decision was lodged, Mark Bernsley (Mr. Bernsley) entered his appearance in this matter on petitioner's behalf.↩
4. Respondent mailed a notice of deficiency for the year 1981 to petitioner at his last known address in Santa Monica, California. The notice of deficiency is dated February 1, 1985, and was apparently mailed on the day that it was dated. The petition to this Court is dated April 30, 1985, and was mailed to the Court in an envelope that does not bear a U.S. Postal Service postmark. The envelope bears a private postage meter stamp that reads "New York, Mar-1'85", and Certified Mail sticker P449156817, with "Return Receipt Requested" stamped above it. The petition was received by the Court at 9:15 a.m. on Monday, May 6, 1985, which was the 95th day after the notice of deficiency was mailed.↩
5. On December 27, 1991, Mr. Bernsley entered his appearance in this case on behalf of Roscoe C. Webb, Jr. At that time Lydia M. Webb was no longer a party to this case.↩
6. There is no evidence in the record that the revenue agent who mailed this letter knew that petitioner's 1981 tax year was at the time involved in a case pending before this Court.↩
7. The closing agreement states in pertinent part: The Taxpayers are entitled to an ordinary deduction in the amount of $ 69,930 for the taxable year ending December 31, 1981, with respect to their investment in the Partnership. Said amount represents 75% of their cash investment in the Partnership. * * * No penalty shall be assessed against the Taxpayers for the taxable year ended December 31, 1981 or any subsequent taxable year by reason of the disallowance of any losses claimed as a result of their interest in the Partnership. The increased interest rate pursuant to I.R.C. sec. 6621(c)↩ shall apply.
8. Petitioner was subpoenaed by respondent and testified at the trial.↩
9. Respondent's counsel apparently had no knowledge of the existence of the closing agreement until Mr. Bernsley informed the Manhattan District Counsel of its existence by telephone on December 2, 1991. There is no evidence in the record as to whether any of petitioner's prior counsel had knowledge of the closing agreement. In Mr. Bernsley's Feb. 26, 1992, affidavit he states as follows: I have also discussed this matter with Alan Fraade, petitioner's former attorney. He advised me that he was unaware of the Closing Agreement. I attempted to secure a Declaration from Alan Fraade, however, he has been uncooperative. After promising to execute a declaration, he failed to do so and has not taken or returned my telephone calls.
The Court is perplexed as to why petitioner, or his former counsel, if they knew, withheld such vital information from the Court. There was a duty and obligation to do so if petitioner intended to rely on the provisions of the closing agreement.↩
10. See sec. 301.7121-1(d)(1), Proced. & Admin. Regs., which provides that a request for a closing agreement may be made at any time "before a case with respect to the tax liability involved is docketed in the Tax Court of the United States."↩
11. We note that based on the agreement of the parties, as set forth in the Decision Document of docket No. 24771-92, respondent conceded the additions to tax for petitioner's 1984 tax year. However, petitioner's 1984 tax year is irrelevant to the case before us.↩
12. Deleg. Order No. LA-189 (Rev. 4) states in pertinent part: * * * the incumbents of, and persons acting in, the positions listed below are authorized, in cases under their jurisdiction (but excluding cases docketed before the United States Tax Court) to enter into and approve a written agreement with any person relating to the Internal Revenue tax liability of such person (or of the person or estate for whom he/she acts) for a taxable period or periods ended prior to the date of agreement, and related specific items affecting other taxable periods. Quality Review Division
Chief of the Division Assistant Chief of the Division Section Chiefs Examination Division
Chief of the Division Assistant Chief of the Division Field Examination Branch Chiefs Office Examination Branch Chiefs Tax Shelter Program Manager↩
[Emphasis added.]
13. The pertinent language of Deleg. Order No. 225 (Rev. 1), 52 Fed. Reg. 13008 (April 29, 1987) is as follows: 1. The Assistant Commissioners (Examination) and (International), Assistant Regional Commissioners (Examination), and Examination Managers and Supervisors GM-13 and GM-14 in Districts, Service Centers and Compliance Center are hereby authorized in cases under their jurisdiction to enter into and approve a written agreement with any person relating to the Internal Revenue liability, of such person (or of the person or estate for whom he/she acts) to close pre-ERTA tax shelter commodity issues, based on the Servicewide administrative positions developed by Appeals, Chief Counsel, and Examination, and other tax shelter initiative issues based on settlement positions reached by Chief Counsel or Appeals on the specific shelter where the initial investment was made prior to January 1, 1983. These agreements will be executed on Form 870-AD, Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment, and Form 906, Closing Agreement on Final Disposition Covering Specific Matters. The authority delegated herein extends only to tax shelter issues, including penalties or related statutory issues that must be adjusted due to settlement of the tax shelter issues. This authority, also extends to tax shelter issues on subsequent year returns where benefits from pre-1983 tax shelters are claimed. [Emphasis added.]↩
14. It does not matter whether the agent knew the scope of his authority. See Heckler v. Community Health Serv., Inc., 467 U.S. 51, 63 n.17 (1984) ("anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the government stays within the bounds of his authority. * * * And this is so even [where] the agent himself may have been unaware of the limitations upon his authority." (quoting Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 384↩ (1947)).
15. Sec. 7121(b) states as follows: SEC. 7121. CLOSING AGREEMENTS. * * * (b) FINALITY. -- If such agreement is approved by the Secretary (within such time as may be stated in such agreement, or later agreed to) such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact -- (1) the case shall not be reopened as to the matters agreed upon or the agreement modified by any officer, employee, or agent of the United States, and (2) in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded.↩
16. In Lasky v. Commissioner, 352 U.S. 1027 (1957), the Supreme Court affirmed per curiam a decision of the United States Court of Appeals for the Ninth Circuit (where an appeal in this case would lie), holding that the Tax Court lacks jurisdiction to grant a motion to vacate decision after the decision has become final. See Lasky v. Commissioner, 235 F.2d 97↩ (9th Cir. 1956).
17. On remand, petitioner does not argue that fraud was perpetrated on the Court. "Fraud on the court must involve 'an unconscionable plan or scheme which is designed improperly to influence the court in its decision.'" Abatti v. Commissioner, 859 F.2d 115, 119 (9th Cir. 1988)(quoting Toscano v. Commissioner, 441 F.2d 930, 934 (9th Cir. 1971), affg. 86 T.C. 1319 (1986)). As the moving party, petitioner would have borne the burden to establish fraud by clear and convincing evidence. See England v. Doyle, 281 F.2d 304, 309-310↩ (9th Cir. 1960).
18. A third exception to the finality rule is where the Tax Court's decision was based on mutual mistake. See, e.g., Reo Motors, Inc. v. Commissioner, 219 F.2d 610 (6th Cir. 1955). However, the Court of Appeals for the Ninth Circuit, where an appeal in this case would lie, has declined to recognize this exception. Billingsley v. Commissioner, 868 F.2d 1081, 1084 n.11 (9th Cir. 1989); Abatti v. Commissioner, supra at 118, affg. 86 T.C. 1319↩ (1986). Therefore, we will not discuss this exception.
19. Again, it is not clear from the record whether petitioner informed his former attorneys of the closing agreement's existence. If he did, then the attorneys should have informed the Court if the closing agreement was believed to be valid.↩
20. Fed. R. Civ. Proc. 60(b)(4) authorizes a court to grant relief from a judgment that is "void". Pursuant to this rule, a judgment is not void merely because it grants an unauthorized remedy; rather, the court must have totally lacked jurisdiction over the class of case involved. The Tax Court may follow and give weight to the Federal Rules of Civil Procedure. Rule 1(a). Where * * * the court has jurisdiction over the class of case involved, its judgment is not void, and hence is not subject to collateral attack, on the ground * * * that the right involved in the suit did not embrace the relief granted. In brief, then, except for the rare case where power is plainly usurped, if a court has the general power to adjudicate the issues in the class of suits to which the case belongs, then its interim orders and final judgments, whether right or wrong, are not subject to collateral attack, so far as jurisdiction over the subject matter is concerned. [Fn. ref. omitted.]
7 Moore's Federal Practice sec. 60.25[s] (2d Ed. 1991) (footnotes omitted); see also Honneus v. Donovan, 691 F.2d 1↩ (1st Cir. 1982).