**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CHARLES A. GREENE; CHRISTINE J.
GREENE,
<u>Petitioners-Appellants,</u>

No. 98-1939

v.

COMMISSIONER OF INTERNAL REVENUE,
<u>Respondent-Appellee.</u>

Appeal from the United States Tax Court.
(Tax Ct. No. 94-5296)

Argued: April 8, 1999

Decided: July 16, 1999

Before WIDENER and TRAXLER, Circuit Judges,
and BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John Reed Johnston, Jr., TUGGLE, DUGGINS & MES-
CHAN, P.A., Greensboro, North Carolina, for Appellants. Janet A.
Bradley, Tax Division, UNITED STATES DEPARTMENT OF JUS-
TICE, Washington, D.C., for Appellee. **ON BRIEF:** Loretta C.
Argrett, Assistant Attorney General, Ann B. Durney, Tax Division,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Charles A. Greene and Christine J. Greene appeal from a decision of the United States Tax Court, which found them liable for under-payment of taxes attributable to negligence for the tax years 1983 and 1984. See Greene v. Commissioner, 75 T.C.M. (CCH) 1967 (1998). We affirm. Because Christine J. Greene's liability arises only because she joined in the couples' return, we will refer to Charles A. Greene as the taxpayer.

I

Greene had over ten years of experience in the business world working in sales and collections; however, he had no formal education in accounting, finance, investing, or business planning. When Greene became interested in starting his own business in 1972, he sought the advice of Irv Corman, a certified public accountant who was retained to provide accounting advice.

The business grew slowly, but by the early 1980s Greene was earning a substantial six-figure salary. As profits increased, he became interested in investing. Although Corman was not retained as an investment advisor, he regularly presented Greene with investment opportunities. Satisfied that Corman was qualified to analyze investments, Greene relied on his recommendations and his own review of whatever written materials Corman provided.

"GeoVest" was the first investment Greene made at Corman's suggestion. Greene understood this to be an investment in oil and gas partnerships. Corman prepared Greene's federal income tax returns for taxable years 1981 and 1982, in which partnership losses from investments in "GeoVest Drilling Fund Ltd 1981-A" and "GeoVest Drilling Fund Ltd 1981-B" were reported. In 1983, Corman again rec-

2

ommended that Greene invest in an oil and gas partnership, the Mid Continent Drilling Associate II limited partnership (MCDA-II). One of Corman's clients had invested in the partnership in 1981. The investment required a $10,000 cash payment and subsequent $10,000 cash payments in 1982 and 1983. Additionally, Corman's client had agreed to become liable on a $120,000 obligation to Mitchell Petroleum Corp. to become due on January 15, 1994. In 1983, he was unable to make the final $10,000 cash contribution to the partnership. Corman told Greene that this situation gave him an opportunity to invest in the partnership at a reduced rate. According to Corman, this investment was "similar" to GeoVest, "had potential for return," and looked like it would be a "good investment."

Before investing in MCDA-II, Greene reviewed the prospectus and discussed the tax aspects of the investment with Corman. Greene expected some tax benefits to result from the investment, namely, "flow-throughs" of losses and investment tax credits. Greene was aware that Corman was not an oil and gas expert and that his advice was based entirely on his reading of the prospectus. While Greene discussed the investment with other MCDA-II investors, he never consulted an expert in oil and gas partnerships.

Greene purchased an interest in MCDA-II by paying the $10,000 capital call for 1983, plus $600 interest. Additionally, he assumed liability for one-half of the $120,000 obligation. Corman prepared the federal income tax returns for 1983 and 1984. Based on the Schedule K-1 that the partnership provided, Greene claimed an ordinary loss of $46,007 and an investment credit of $190 on the 1983 tax return. In 1984, Greene claimed a partnership loss reflecting his share of losses in the amount of $1,633.

In 1985, the partnership sued its accountants, Laventhol & Horwath. Despite news of the lawsuit, Greene made no inquiry into the operations of the partnership until 1986 when he learned that the IRS was disallowing deductions related to a similar partnership. The news about disallowance of deductions prompted Corman to suggest that Greene should consult a tax attorney. After speaking with a tax attorney, Greene believed that it was possible that controversies involving MCDA-II investments could be settled with the IRS. As he under-

3

stood it, if investors agreed to forgo their partnership deductions, they would be allowed to deduct their cash investment.

On August 11, 1986, the IRS mailed Greene a notice that an examination of the 1983 MCDA-II partnership return was to be undertaken. Consistent with Greene's understanding of how other investors settled with the IRS, Greene filed an amended return for 1983, along with a Notice of Inconsistent Treatment in December, 1986. The amended return reflected a $36,007 reduction in the partnership loss, leaving only a claim for their $10,000 cash contribution. The amendment also eliminated the $190 investment tax credit. Greene remitted with the amended return a total of $24,393, consisting of $18,194 for the tax and $6,199 for interest. The IRS considered $18,194 as an advance payment of an examination deficiency and $6,181.36 as a designated payment of interest.

In October 1990, the Tax Court determined that the activities of MCDA-II that took place during 1981 and 1982 were not engaged in "for profit." See Webb v. Commissioner, 60 T.C.M. (CCH) 1085 (1990), remanded 17 F.3d 398 (9th Cir. 1994), on remand 68 T.C.M. (CCH) 1106 (1994), aff'd 68 F.3d 398 (9th Cir. 1995). The Tax Court in Webb categorized the MCDA-II partnership as a tax shelter organized to avoid federal income taxes. In June 1991, Greene rejected a settlement offer proposed by the IRS regarding his MCDA-II investment for taxable years 1983 and 1984. Greene believed that the amended return filed in 1986 properly reported his tax liability.

On December 27, 1993, the IRS made an assessment against Greene for the taxable year 1983 for $5,000 additional income tax and $13,633.01 unpaid interest computed at the increased rate established under 26 U.S.C. § 6621(c). The income tax assessed was based on the disallowance of the $10,000 partnership loss that Greene claimed on the amended return. The IRS mailed notices of deficiency to Greene on December 29, 1993, and February 9, 1994, which contained an addition to tax for negligence under 26 U.S.C. § 6653(a)(1) for the taxable year 1983 and under § 6653(a)(2) for the taxable year 1984.

The Tax Court sustained the Commissioner, and Greene noted his appeal.

4

II

The statute in effect during the years at issue required an addition to tax in the amount of five percent of the underpayment, if any part of any underpayment is due to negligence or disregard of rules or regulations. 26 U.S.C. § 6653(a)(1). An additional penalty is imposed under section 6653(a)(2) in the amount of 50 percent of the interest due on the portion of the underpayment attributable to negligence. Negligence is defined as the "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Schrum v. Commissioner, 33 F.3d 426, 437 (4th Cir. 1994). Greene had the burden of proving that he exercised due care or that he acted as a reasonable or prudent person under the circumstances. See Welch v. Helvering, 290 U.S. 111, 115 (1933). The Tax Court's finding of negligence is reviewed under the clearly erroneous standard. Zfass v. Commissioner, 118 F.3d 184, 190 (4th Cir. 1997).

Greene asserts that he is not liable for the addition to tax for negligence for three reasons. He claimed that only negligence in reporting tax obligations, not negligent investing should be punished under the code; the investment was made pursuant to the advice of a professional; and even if he were to be found negligent, the amended return should eliminate or reduce the underpayment of tax for 1983.

The Tax Court properly rejected each of these arguments. Its finding of negligence rests on substantial evidence. According to the partnership offer, the partnership was formed to conduct exploratory drilling for oil and gas in the Overthrust Belt in Utah; to develop a drilling program in Oklahoma and Tennessee; and to exploit the Terra-Drill, which was a high-speed oil and gas drill under development. Moreover, the offer indicated that for every $10,000 invested, a participant could expect to receive $40,000 in deductions.

At the time Greene invested, two years had gone by, but no drilling had been undertaken in either the Overthrust Belt in Utah or in Oklahoma and Tennessee. The Terra-Drill was never developed. The offering warned about the risk of investment, a significant factor in determining whether the investment was designed for the sole purpose of generating tax deductions. See Goldman v. Commissioner, 39

5

F.3d 402, 407 (2d Cir. 1994). Greene, however, paid little heed to the offering's warning of risk.

Greene relies primarily on dicta in Chamberlain v. Commissioner, 66 F.3d 729 (5th Cir. 1995), for his argument that "negligence" involves not the underlying investment but only due care in claiming deductions. The taxpayer in Chamberlain relied on the advice of a tax expert before claiming a deduction. In the opinion of the expert, there was "a good faith, supportable position" concerning the deduction, and for this reason the court of appeals reversed the imposition of penalties. Id. at 733.

In contrast to the taxpayer in Chamberlain, Greene did not rely on expert advice. Corman had little or no knowledge about oil and gas investments. Greene was unable to recall the specifics of Corman's advice beyond the fact that the partnership was a "good investment." The Tax Court found this general advice insufficient to prove reasonable reliance on an expert. See Illes v. Commissioner, 982 F.2d 163, 166 (6th Cir. 1992). The Tax Court found that Greene was attempting to justify reliance on the advice of an accountant, who had no expertise in the subject matter of the investment. The accountant's knowledge about the partnership was limited to what he read in the prospectus. The Tax Court stated that in order to accurately report deductions and credits it was necessary to verify facts independent of those found in documents presented to the accountant, which Greene failed to do. See Leonhart v. Commissioner, 414 F.2d 749, 750 (4th Cir. 1969). In fact, the 4-to-1 writeoff should have put Greene on notice that the partnership was primarily for tax purposes and not for profit. See Pasternak v. Commissioner, 990 F.2d 893, 903 (6th Cir. 1993).

The Tax Court properly followed the rationale of Sacks v. Commissioner, 82 F.3d 918, 920 (9th Cir. 1996):

> The tax code allows for the deduction of losses "incurred in any transaction entered into for profit." 26 U.S.C. § 165(c)(2). Therefore, negligence in the claiming of a deduction depends upon both the legitimacy of the underlying investment, and due care in the claiming of the deduction.

6

In sum, the Tax Court's finding of negligence is amply supported by the evidence, and it applied correct principles of law.

Greene's third argument concerns the amended return he filed in 1986, which he claims should eliminate or reduce the underpayment of tax for 1983. The amended return, however, was untimely. Section 6653(c)(1) defines the term "underpayment" for the purposes of section 6653. Under this definition only a return "filed on or before the last day prescribed for the filing of such return" can be taken account for the purposes of determining the existence of a deficiency. 26 U.S.C. § 6653(c)(1). The Tax Court determined that Greene's amended return for 1983 filed in 1986 could not be considered in the determination of the existence or the amount of the underpayment for the purposes of the negligence additions to tax imposed by sections 6653(a)(1) and (2).

Greene's reliance on <u>Mamula v. Commissioner</u>, 346 F.2d 1016 (9th Cir. 1965), is misplaced. That case dealt with the methods of reporting profit on the sale of real estate. It did not involve the negligence penalty, and the court explained that neither statute nor regulation penalized the taxpayer. <u>Id.</u> at 1019.

Satisfied that the Tax Court committed no error, we affirm.

<u>AFFIRMED</u>

7